STATE OF NORTH CAROLINA v. HERBERT BLUE.

(Filed 3 May, 1967.)

**1. Criminal Law § 162—**

Where the record does not disclose what the answer of the witness would have been had the witness been permitted to testify, appellant has failed to show prejudicial error in the exclusion of the testimony, since the burden is upon appellant to show prejudicial error and it cannot be assumed that the answer of the witness would have been adverse to him.

**2. Criminal Law § 161—**

The charge of the court will be construed contextually, and exceptions to excerpts therefrom will not be sustained when the charge is free from prejudicial error when so construed.

APPEAL by defendant from *McLaughlin, J.,* November 1966 Session of the Superior Court of MOORE County.

The defendant was charged in a bill of indictment with the first degree murder of Eddie Cossom on 27 August 1966. Upon the call of the case for trial, the solicitor announced that he would not seek a verdict of murder in the first degree but would ask for a verdict of guilty of murder in the second degree or manslaughter. The defendant entered a plea of not guilty.

The State offered the evidence of Paul Brady, which was to the effect that the incident occurred at Alec Mason's Snack Bar; that he and the defendant were sitting on a bench talking when Eddie Cossom, the deceased, said "Keep your hands out of my face." Later, Eddie said in a louder tone, "Keep your hands out of my face, don't put your hands in my face," that the defendant then walked over and told the deceased, "Don't talk to my brother like that," to which Eddie replied, "I'm not talking. I ain't bothering you." The defendant again said "Just don't talk to my brother like that," and started firing; that the defendant had taken a pistol from his right pocket and had it in his right hand; that he fired four or five times. Eddie wasn't doing anything but just standing there. The last two times he (Blue) fired, Eddie threw up his hands and stood there for about

four or five seconds. On the last shot he threw up his hands like he was hit, then fell against the wall and slid on out in the floor. Blue left, telling the people not to come out in the yard. Eddie was on the floor making a noise, sort of groaning, and had a bloody spot on his left breast about as big as a nickel. The shooting was about 1 o'clock or 2 o'clock, and Eddie lived 25 or 40 minutes after he was shot. The undertaker removed his body about 4 o'clock in the morning.

The coroner testified that he found a bullet wound through the heart which caused the death of the deceased. There was another bullet wound through the neck. He examined the deceased on the floor and stated that Eddie had no weapon in his pockets.

Lonnie James testified that he was present at the time of the shooting, that Blue got up off the bench and told Eddie not to talk to his brother that way, walked about five feet until he got within three feet of Eddie when he pulled a pistol from his right pocket and started shooting in the direction of the deceased. He said he didn't hear Eddie say anything, or see him do anything, and did not see him with anything in his hand.

The defendant testified in his own behalf that the deceased had claimed he (Blue) was an undercover man and was there buying whiskey to turn people up, that the deceased opened his knife and that Brady, State's witness, told the deceased he had a knife and to cut him (Blue); that he, the defendant, started to go out the door, and he met Brady and took a gun from him, and that Brady told the deceased to cut him. The defendant denied that he owned a pistol or took one to the Snack Shop, and said he had never seen the deceased before that time. He said he fired because he couldn't get out of the place, that one man was coming on him with a knife, and that James was standing by the door and wouldn't let him get out, and that he took the pistol from James. The defendant's sister, Ruth Blue, and a brother, John Blue, gave similar accounts of the incident, saying that Cossom had a long knife and was coming on the defendant and got close enough to him to kick him in the stomach.

Upon a conviction of manslaughter, a prison sentence of not less than 15 nor more than 18 years was pronounced, and the defendant appealed.

*Seawell & Seawell & Van Camp by H. F. Seawell, Jr., Attorneys for defendant appellant.*

*T. W. Bruton, Attorney General, and Ralph Moody, Deputy Attorney General, for the State.*

PER CURIAM. The defendant groups his exceptions into two categories. The first of them is to the action of the court in sustaining the State's objection to some eleven questions asked by his counsel, most of which were asked of the State's witnesses. On cross examination it would appear that the court was correct in all the rulings, but in none of them is the expected answer of the witness shown, and thus we are left to conjecture as to whether the answers would have been favorable to the defendant or unfavorable.

The ruling requiring that the proposed answers be shown is not a pure technicality — it is a practical requirement. Unless the answer would be favorable to the propounder, he has not been disadvantaged, and if he would have been, the trial court, and we, are entitled to that knowledge. Neither should be required to surmise what the answer might have been.

In *State v. Poolos*, 241 N.C. 382, 85 S.E. 2d 342, Denny, J. (later C.J.) said:

> "The record does not disclose what the reply of the witness would have been if she had been permitted to answer; consequently, it is impossible for us to know whether the ruling was prejudicial to the defendant or not . . . the burden is upon the appellant not only to show error but to show that such error was prejudicial to her. We cannot assume that the answer of the witness would have been in the affirmative . . . it is what the witness would have said in response to the question, if she had been permitted to answer, that would enable us to determine whether the appellant was prejudiced by the ruling below."

Chief Justice Denny quotes from other cases:

> " 'Since the record fails to disclose what the witness would have said, we cannot assume that his answer would have been favorable to the defendant. It would be vain to grant a new trial upon the hazard of an uncertain answer by the witness.' " And " 'The record does not show what the answer of the witness would have been if permitted to answer. Competency of the testimony is not, therefore, presented by the assignments of error.' "

If the question and proposed answer are of substantial import, the answer can be supplied then by excusing the jury and having the witness make it for the stenographic record. If this procedure is not deemed practical and is too time-consuming, the answer may be supplied later by order of the court or upon agreement of counsel.

The court sustained the State's objection to two statements made by the defendant in his testimony but committed no error in doing so.

The other group of exceptions relate to the judge's charge. The criticism is directed towards the following summarized statements of the court: (1) that the solicitor was not seeking a verdict of first degree murder but a verdict of guilty of murder in the second degree or manslaughter; (2) that it was for the jury to determine the degree of guilt, if any, "or to say — that he is not guilty of either offense"; (3) the use of excessive force to repel an assault constitutes manslaughter; and (4) the court's reference to "perfect and imperfect right of self-defense."

An examination of the entire charge with particular reference to the exceptions reveals no error; and, in fact, it is a very clear, thorough and proper charge. Even taken alone, none of the exceptions are justified, and in each instance the quoted section is preceded, or followed by, full and correct statements of the law.

This was a typical case for determination by a jury. The State's evidence showed a completely unjustified killing, while the defendant's evidence would, if believed, justify a verdict of not guilty upon the grounds of self-defense. The evidence amply sustained a verdict of guilty of manslaughter, and in the trial we find

No error.