STATE OF NORTH CAROLINA v. TAMARCUS SWIFT, Alias POISON IVY

No. 24

(Filed 14 July 1976)

1. **Indictment and Warrant § 10— use of alias in indictment**

 Defendant was not prejudiced by the court's denial of his motion to quash the indictments on the ground that his name was set out therein as "Tamarcus Swift, Alias Poison Ivy," especially since two witnesses who knew defendant well used the alias when testifying, the court sustained objections to use of the alias by the district attorney, and the court instructed the jury that the alias was not to be considered to defendant's detriment.

2. **Constitutional Law § 30— references to defendant by nicknames — fair trial**

 Defendant was not denied a fair trial because State's witnesses were permitted to refer to defendant by his nicknames of "Poison Ivy" and "Poison," especially where defendant offered testimony in which the nickname "Poison Ivy" was used.

3. **Homicide § 12— murder indictment under G.S. 115-144 — proof of felony-murder**

 A felony-murder may be proven by the State although the indictment charges murder in the statutory language of G.S. 15-144.

4. **Homicide § 12; Indictment and Warrant § 13— bill of particulars — election by State — felony-murder or premeditated murder**

 The trial court did not err in the denial of defendant's motion for a bill of particulars stating whether the State would proceed under the felony-murder rule or on the basis of premeditation and deliberation since the district attorney advised that the State would proceed under both theories, and since the State was not required to elect upon which theory it would proceed prior to the introduction of evidence.

5. **Constitutional Law § 29; Jury § 7— capital punishment beliefs — excusal for cause — effect of invalidation of death penalty**

 Defendant was not prejudiced by the excusal for cause of prospective jurors because of their capital punishment beliefs since the death penalty provisions of the statute under which defendant was convicted and sentenced to death, G.S. 14-17 (Cum. Supp. 1975), was invalidated by the U. S. Supreme Court in *Woodson v. North Carolina*, . ... U.S. . ... (1976).

6. **Criminal Law § 87— leading questions**

 The trial court did not abuse its discretion in permitting the district attorney to ask leading questions during the direct examination of State's witnesses.

.

State v. Swift

7. **Criminal Law § 73— declarations to defendant — competency to show knowledge, state of mind**

In a homicide prosecution, testimony by State's witnesses that defendant's aunt told him that she had been beaten up by the victim's husband, that defendant's aunt told defendant where to find the residence of the person who had beaten her, and that an unidentified person told defendant that the victim's husband was coming out of a house was competent to show defendant's knowledge of the asserted facts and to indicate his intentions and state of mind toward the victim's husband.

8. **Criminal Law § 65— evidence to show state of mind and intentions**

In a homicide prosecution, testimony that after the shooting defendant's aunt "seemed to be upset because of what happened" and defendant "got her to go in the house and go to bed" was competent to show defendant's state of mind, his intentions and mood at the time.

9. **Criminal Law § 57— testimony as to how rifle functioned**

A police officer's testimony as to how a certain rifle functioned was competent to show that the rifle could not have discharged accidentally in the manner contended by defendant.

10. **Criminal Law § 43— proper use of photographs**

Photographs were not used as substantive evidence but were properly used for illustrative purposes when a witness placed an "X" on a photograph to locate defendant's position, when a witness testified as to the amount of blood shown in a photograph, and when a witness identified blood on the walls and holes in the walls as shown on the photographs.

11. **Homicide § 20— teeth found at murder scene — competency**

Testimony as to the location of several teeth found at the scene of the homicide was competent to corroborate a physician's testimony that deceased was killed with a gunshot wound in the face and to show the direction from which the shot was fired and the range of the shot.

12. **Criminal Law § 128— arrest of person with weapon in courtroom — knowledge of juror — motion for mistrial**

The trial court did not err in the denial of defendant's motion for a mistrial when a juror notified the court that her supervisor had told her that some man, unrelated to this case, was arrested in the courtroom during the trial for carrying a loaded weapon where the court interrogated the jurors and determined that each of them could return a fair and impartial verdict uninfluenced by the incident.

13. **Criminal Law § 101— sequestration of jury**

The sequestration of the jury rests in the discretion of the trial court. G.S. 9-17.

14. **Constitutional Law § 30; Criminal Law § 102— possibility of indictment of defense witnesses — procedure out of jury's presence — fair trial**

Defense witnesses were not threatened by the district attorney and defendant was not denied a fair trial when the court, upon learn-

State v. Swift

ing that two potential defense witnesses might be charged as accessories after the fact to murder, advised the potential witnesses of their rights out of the jury's presence, and the district attorney stated that he had no intention of indicting one of the witnesses and thus intimated that the other witness might be indicted; furthermore, defendant was not prejudiced by such procedure since both witnesses testified favorably for defendant.

**15. Criminal Law § 76—waiver of right to remain silent — sufficiency of evidence**

Although the court found that defendant gave no specific answer when asked whether he desired to answer a certain question, the court's determination that defendant waived his right to remain silent was supported by the evidence and findings when the fact that defendant had affirmatively waived his right to counsel and had affirmatively acknowledged understanding his Miranda rights is considered with the other responses and statements made by defendant.

**16. Criminal Law § 112— instructions on reasonable doubt — doubt from evidence or lack of evidence**

The trial court did not err in instructing that a reasonable doubt is an honest, substantial misgiving generated "by the insufficiency of proof" without instructing further that such misgiving could arise "out of the evidence" since it is clear from the charge as a whole, including the court's instruction that a reasonable doubt "is a sane, rational doubt arising out of the evidence or lack of evidence," that the court used the words "insufficiency of proof" to refer to an insufficiency arising out of the evidence or out of the lack of evidence.

**17. Assault and Battery § 15— discharging firearm into occupied dwelling — instructions — intentional use of firearm**

The trial court did not err in the use of the words "intentionally used a firearm" when instructing on the offense of discharging a firearm into an occupied dwelling where it is clear that the court used the words as synonymous with "intentionally fired or discharged a firearm."

**18. Homicide § 28— instructions — accident or misadventure — "actual" firing of weapon**

The trial court in a homicide prosecution did not err in charging the jury that defendant contended he did not "actually" fire the rifle into the victim's dwelling rather than stating that defendant contended he did not "intentionally" fire the rifle into the dwelling; furthermore, the court in substance gave defendant's requested instruction that he would not be guilty if he "unintentionally" proximately caused the victim's death by use of a rifle.

**19. Criminal Law § 126— instructions on unanimity of verdict**

The court's instruction, "Any verdict you arrive at must be unanimous; in other words, there must be a meeting of the minds," could not have caused the jurors to believe that there had to be a meeting of the minds and thus did not coerce a verdict.

20. **Homicide §§ 4, 14; Constitutional Law § 30— felony-murder rule — constitutionality**

   The felony-murder rule set forth in G.S. 14-17 does not establish a presumption of premeditation and deliberation in violation of the due process requirement that the prosecution prove beyond a reasonable doubt every fact necessary to constitute the crime charged, since under the statute premeditation and deliberation are not elements of the crime of felony-murder and the statute involves no presumption at all.

21. **Homicide §§ 14, 30— felony-murder — proof of premeditation and deliberation — submission of lesser offenses**

   When the law and evidence justify use of the felony-murder rule, the State is not required to prove premeditation and deliberation, and the court is not required to submit to the jury second-degree murder or manslaughter unless there is evidence to support it.

22. **Homicide § 4— felony-murder — discharging firearm into occupied dwelling**

   The offense of discharging a firearm into an occupied dwelling in violation of G.S. 14-34.1 is an unspecified felony within the purview of G.S. 14-17 and can result in a conviction for first-degree murder under the felony-murder rule.

23. **Constitutional Law § 36; Criminal Law § 135; Homicide § 31— unconstitutionality of death penalty — imposition of life imprisonment**

   Since the U. S. Supreme Court in *Woodson v. North Carolina*, ...... U.S.    , invalidated the death penalty provisions of G.S. 14-17, the statute under which defendant was convicted and sentenced to death for first degree murder, the sentence of death is vacated and a sentence of life imprisonment substituted therefor by authority of 1973 Sess. Laws, c. 1201, § 7 (1974 Session).

DEFENDANT appeals from judgment of *Peel, J.,* 11 August 1975, Criminal Session, WAYNE Superior Court.

On indictment, proper in form, defendant was charged with the murder of Thelma Jean Jones on 3 June 1975. The jury returned a verdict of guilty of murder in the first-degree, and the death sentence was imposed.

The evidence for the State tended to show the following:

Linda Faye Carroll, defendant's aunt, had been going with a married man named Zeno Jones for a few weeks. Zeno Jones' wife, Thelma Jean Jones, was the victim.

On 3 June 1975 Linda Faye Carroll and Zeno Jones had been riding around together drinking vodka. While they were riding, they had an argument because Jones said he was breaking up with her. During the argument Linda Faye Carroll was

State v. Swift

hit in the face, whereupon she jumped out of the car some distance from Mina Weil Park in Goldsboro, North Carolina, and then walked to the park where she saw her nephew, the defendant, who was with Gwendolyn Sherrod, Annie Davis and others.

Defendant then drove Gwendolyn Sherrod's car away from Mina Weil Park. In this vehicle were Linda Faye Carroll, Gwendolyn Sherrod, Annie Davis, and George Faison. Another car followed. Defendant went to a house on Slocumb Street and obtained a rifle from Alton Artis. Linda Faye Carroll had a conversation with Annie Davis in front of defendant concerning how Zeno Jones had beaten her up.

Defendant then drove the car to a low rent housing project in Goldsboro, North Carolina, where Zeno Jones and his wife lived with their family. Defendant with the rifle in his hand got out of the car accompanied by Linda Faye Carroll. They walked towards 110 Dupont Circle, which was the home of Zeno Jones and his wife. It was about 11:00 p.m.

Linda Faye Carroll knocked on the door at 110 Dupont Circle. A witness in the car testified that she saw defendant with the rifle in his hand. He moved the lever, pointed the gun, and after some seconds a shot was fired. Very soon after this, Linda Faye Carroll and defendant came back to the car. Another witness had observed that defendant had a gun in the front of the Jones' apartment after the shot was fired.

Zeno Jones testified that after he had been home for a while on this night he heard a knock on the door. He, his wife and two children were in the apartment. His wife went to the door and came back and told Zeno Jones that somebody was there to see him. She went back to the door. At this time defendant and Linda Faye Carroll were outside the door. Zeno Jones testified that defendant shot his wife. A rifle (State's Exhibit 1) was found behind the dwelling where defendant was arrested.

Dr. Warren E. Parmalee was an expert medical witness. He went to the Zeno Jones home, arriving about 11:45 p.m. He found Thelma Jean Jones lying on the inside of the door in the entry hallway with much blood around her. There was an entry wound in the front of her face and an exit wound in the back of her neck. It was his opinion that the probable cause of death was a gunshot wound to her head.

Defendant's evidence tended to show the following:

Defendant was in the Army stationed at Fort Bragg, North Carolina, and was at home for the weekend. He had been drinking at the Park. After his aunt, Linda Faye Carroll, told him about Zeno Jones beating her up, he advised her to take out a warrant against him. Defendant obtained the rifle from Artis for Linda Faye Carroll's protection. He went to the Jones' residence to talk to him. Defendant told Linda Faye Carroll there would be no shooting. He testified that he took the rifle out of the car and propped it against the side of the house. Linda Faye Carroll made the first move for the rifle, and then they became engaged in a struggle for the rifle. The rifle fired while they were struggling, but his finger was not on the trigger. Also, Linda Faye Carroll had her hands on the rifle when it discharged.

Other facts necessary to the decision will be discussed in the opinion.

*Attorney General Rufus L. Edmisten by Assistant Attorney General Charles M. Hensey and Associate Attorney Henry H. Burgwyn for the State.*

*W. Dortch Langston, Jr. and Phillip A. Baddour, Jr. for defendant appellant.*

COPELAND, Justice.

Counsel for defendant makes a total of 63 assignments of error, based on 333 exceptions. 12 assignments have been abandoned.

[1] (1) Assignment of Error No. 1 contends it was error to deny defendant's motion to quash the bills of indictment because defendant's name is set out in both bills as "Tamarcus Swift (Alias Poison Ivy)."

The word "alias" is defined in Webster's Third New International Dictionary 52, 53 (1971) as "used esp. in legal proceedings to connect the different names of anyone who has gone by or been known by two or more names." The record in this case indicates that defendant was known to his friends and acquaintances as "Poison Ivy."

Quashal of indictments is not favored where they do not affect the merits of the case. *State v. Beach*, 283 N.C. 261, 196

State v. Swift

S.E. 2d 214 (1973) ; 4 Strong, N. C. Index 2d, Indictments and Warrants § 7 and cases theren cited; G.S. 15-153. Here defendant contends that he was denied a fair trial because the use of the alias might create in the minds of the jury an implication that he was a criminal. To support this position, defendant cites two federal cases in which there was no reversible error found on account of the use of the aliases involved. Language in these cases stands for the proposition that loading indictments with unnecessary aliases is or may be inherently prejudicial. *United States v. Monroe,* 164 F. 2d 471 (1947) ; *D'Allessandro v. United States,* 90 F. 2d 640 (1937). There was no such loading of the indictments in our case. The indictments included only one alias or nickname. Apparently this was defendant's only alias. At least two witnesses who knew defendant well used this alias when testifying.

Also, we note that the trial court sustained objections as to the use of the alias by the District Attorney. Additionally, in the final instruction to the jury they were told:

> "Now, members of the jury, the fact that he stands indicted . . . is no evidence of his guilt and you will not consider it against him. Likewise the fact, ladies and gentlemen, the fact that the bills of indictment—they were read to you—were read to you in the form—in the name of the defendant as Tamarcus Swift, alias Poison Ivy, are not to be considered by you to his detriment in any respect."

This instruction substantially conforms to the instruction approved in *United States v. Monroe, supra.*

Defendant has failed to show any prejudicial error. There is no merit to this assignment, and it is overruled.

[2]    (2) In Assignment of Error No. 12, defendant in a related manner maintains the court erred in overruling defendant's objections and motions to strike relative to his name being referred to by witnesses for the State as "Poison Ivy" and "Poison" for that it prejudiced the jury against him. He contends that referring to him by his nickname prevented him from getting a fair trial.

The record indicates that the District Attorney used the nickname twice when examining witnesses. The court sustained objection each time. It is noted from the record that defendant offered testimony in which the nickname "Poison Ivy" was

used and there was no objection or motion to strike. Thus, there was no prejudicial error from the admission of similar testimony by the State. *State v. Van Landingham,* 283 N.C. 589, 197 S.E. 2d 539 (1973) ; *State v. Stepney,* 280 N.C. 306, 185 S.E. 2d 844 (1972) ; *State v. Doss,* 279 N.C. 413, 183 S.E. 2d 671 (1971) ; *State v. Crump,* 277 N.C. 573, 178 S.E. 2d 366 (1971) ; 1 Stansbury's N. C. Evidence, § 30 (Brandis Rev. 1973). Frankly, we do not believe it would have been error to refer to defendant by the name by which he was generally known. The fact that his nickname may have been demeaning does not create error per se. Defendant had an opportunity to explain his nickname. In fact, he testified that he got the nickname "Ivy" from his grandmother when he was 4 or 5 years old.

The assignment of error is without merit and overruled.

**[3]**    (3) Assignments 3 and 62 argue that the language of the bill of indictment did not identify the crime charged and was ambiguous and confusing.

The bill of indictment reads as follows:

"THE JURORS FOR THE STATE UPON THEIR OATH PRESENT, That Tamarcus Swift (Alias Poison Ivy) late of the County of Wayne on the 3rd day of June, 1975, with force and arms, at and in said County, feloniously, wilfully, and of his malice aforethought, did kill and murder Thelma Jean Jones, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State."

Defendant says this bill of indictment does not give him notice that the State intends to rely on the felony-murder rule as it is spelled out in General Statutes 14-17.

Defendant concedes that our Court has held for many years that a felony-murder may be proven by the State as alleged here under the statutory language of General Statutes 15-144. *State v. Lee,* 277 N.C. 205, 176 S.E. 2d 765 (1970) ; *State v. Scales,* 242 N.C. 400, 87 S.E. 2d 916 (1955) ; *State v. Mays* 225 N.C. 486, 35 S.E. 2d 494 (1945) ; *State v. Smith,* 223 N.C. 457, 27 S.E. 2d 114 (1943) ; *State v. Fogleman,* 204 N.C. 401, 168 S.E. 536 (1933).

In addition to the murder indictment, defendant was also charged in another bill of indictment with the willful discharge

of a firearm into occupied property in violation of General Statutes 14-34.1. Both bills refer to the deceased, Thelma Jean Jones. Defendant was certainly made aware of the fact that he would be called upon to answer for the murder of Thelma Jean Jones and also for shooting into an occupied dwelling where she was. These two indictments, when read together, informed defendant of the crimes with which he was charged. Our law is clear on the subject, and we adhere to our previous decisions. The assignment of error is without merit and overruled.

[4]    (4) Defendant's Assignment of Error No. 4 maintains the court erred in denying his motion for a bill of particulars, which requested the State to determine whether it was going to proceed on felony-murder or murder based on premeditation and deliberation.

The record discloses that this question was considered by the trial court and the District Attorney advised defendant that he would proceed in the case upon the theory of felony-murder and also premeditation and deliberation. A subsequent renewed motion of defendant requesting the State to elect under which theory it would proceed was overruled.

General Statutes 15-143, providing for a bill of particulars, was repealed 1 July 1975, and the present law on the subject is now included in General Statutes 15A-925. Justice Moore, speaking for our Court on this subject in terms still relevant under G.S. 15A-925, said:

"The function of such a bill of particulars is (1) to inform the defense of the specific occurrences intended to be investigated on the trial and (2) to limit the course of the evidence to the particular scope of inquiry. [Citations omitted.]

"The granting or denial of motions for a bill of particulars is within the discretion of the court and is not subject to review except for palpable and gross abuse thereof." [Citations omitted.] *State v. McLaughlin,* 286 N.C. 597, 603, 213 S.E. 2d 238, 242 (1975).

Defendant was obviously aware that the trial was going to proceed on both theories, and there does not appear to be any evidence introduced which was beyond the knowledge of defendant and necessary to enable defendant adequately to prepare or conduct his defense. Certainly, the court did not abuse its discre-

tion in denying the motion for a bill of particulars. *State v. McLaughlin, supra;* G.S. 15A-925.

We have held that the State is not required to elect prior to the introduction of evidence as to whether it will proceed under the felony-murder rule or on the basis of premeditation and deliberation. *State v. Boyd,* 287 N.C. 131, 214 S.E. 2d 14 (1975).

We adhere to our previous decisions, and the assignment of error is overruled.

**[5]** (5) Did the court commit error in excusing certain jurors for cause, as contended in assignments of error 6, 7, and 9?

These assignments of error generally relate to questions dealing with capital punishment that were asked jurors during the jury selection process. On 2 July 1976 the Supreme Court of the United States in *Woodson v. North Carolina,* ____ U.S. ____ in a five-to-four decision invalidated the death penalty provisions of G.S. 14-17 (Cum. Supp. 1975), the statute under which defendant was convicted and sentenced to death. For this reason, these assignments of error become academic and there can be no prejudicial error. *State v. Covington,* 290 N.C. 313, 226 S.E. 2d 629 (1976), decided this same day. The assignments are overruled.

**[6]** (6) By Assignment of Error No. 13, defendant argues the court erred in overruling defendant's objections to 58 leading questions asked by the State to its witnesses on direct examination.

It is generally held that leading questions may not be asked on direct examination but the rulings of the trial judge are discretionary. *State v. Brunson,* 287 N.C. 436, 215 S.E. 2d 94 (1975) ; *State v. Greene,* 285 N.C. 482, 206 S.E. 2d 229 (1974) ; 1 Stansbury's N. C. Evidence, *supra* § 31.

Justice Branch speaking for our court in *State v. Greene, supra* at 492, 493, 206 S.E. 2d at 236 said:

"The trial judge in ruling on leading questions is aided by certain guidelines which have evolved over the years to the effect that counsel should be allowed to lead his witness on direct examination when the witness is: (1) hostile or unwilling to testify, (2) has difficulty in understanding the question because of immaturity, age, infirmity or ignorance or where (3) the inquiry is into a subject of

State v. Swift

delicate nature such as sexual matters, (4) the witness is called to contradict the testimony of prior witnesses, (5) the examiner seeks to aid the witness' recollection or refresh his memory when the witness has exhausted his memory without stating the particular matters required, (6) the questions are asked for securing preliminary or introductory testimony, (7) the examiner directs attention to the subject matter at hand without suggesting answers and (8) the mode of questioning is best calculated to elicit the truth. [Citations omitted.]"

Upon examination of the record it appears that the questions are generally within the guidelines above set forth. The rulings of the court were discretionary, and there does not appear to be any abuse of such discretion. *State v. Brunson, supra; State v. Greene, supra.* The assignment is overruled.

**[7]** (7) Under assignments of error 16, 30 and 44, defendant contends the court erred in allowing into evidence over objection the testimony of witnesses Annie Davis, Gwendolyn Sherrod and John Faison.

Generally, the testimony of Annie Davis and John Faison was to the effect that Linda Faye Carroll told defendant that Zeno Jones had beaten her up. It is obvious the testimony was not offered by the State to prove the truth of the matter asserted, but rather to show that these statements were actually made to defendant. No limiting instruction was requested.

The law permits declarations of one person to be admitted into evidence for the purpose of showing that another person has knowledge or notice of the declared facts and to demonstrate his particular state of mind. Such declarations are also admissible as circumstantial evidence of the existence of a particular emotion which would naturally result from hearing the words or otherwise help to explain subsequent conduct. 1 Stansbury's N. C. Evidence, *supra* § 141.

Certainly, these statements were relevant to show defendant's knowledge or notice of the asserted facts as well as to indicate his intentions and state of mind relative to Zeno Jones. For the same reason, the testimony of Gwendolyn Sherrod that Linda Faye Carroll told defendant where to find the residence of Zeno Jones is proper. The further testimony of Annie Davis that someone in the car told defendant they saw Zeno Jones run-

ning out of the house and the testimony of Gwendolyn Sherrod that an unidentified person running toward defendant told him that Zeno Jones was coming out of the house were competent for the reasons above stated.

Even if the testimony is considered inadmissible under the hearsay rule and not within any of the exceptions thereto, these statements were not prejudicial to defendant for the reason that he took the witness stand and admitted virtually every one of the so-called hearsay statements. *State v. Greene, supra; State v. Van Landingham, supra; State v. Stepney, supra.* The assignments of error are overruled.

(8) Defendant maintains the trial court erred in admitting the testimony of Annie Davis and R. A. Stocks under assignments of error 17, 20, and 29, for that it was not relevant.

" . . . [E]vidence is relevant if it has any logical tendency . . . to prove a fact in issue." 1 Stansbury's N. C. Evidence, *supra* § 77, at 234. It is difficult to formulate an exact rule to determine relevancy and materiality because of the variety of possible fact situations. 1 Stansbury's N. C. Evidence, *supra* § 78. We have held that in criminal cases every circumstance that is calculated to throw any light upon the alleged crime is admissible. *State v. Woods,* 286 N.C. 612, 213 S.E. 2d 214 (1975) ; *State v. Britt,* 285 N.C. 256, 204 S.E. 2d 817 (1974) ; *State v. Hamilton,* 264 N.C. 277, 141 S.E. 2d 506 (1965).

[8]  In particular, defendant objects to the testimony of the State's witness Annie Davis that Linda Carroll "seemed to be upset because of what happened" and that "he [the defendant] got her to go in the house and go to bed." Under the guidelines of *Stansbury* this testimony seems relevant and material and tends to show defendant's state of mind, his intentions and mood at the time. The assignment of error is overruled.

[9]  Under this same general category, defendant objects to testimony of Detective Stocks of the Goldsboro Police Department, who had been so employed for eleven and one-half years. The weapon involved was identified as a Winchester 30.30 rifle. Detective Stocks, who was familiar with the operation of this type of rifle, testified over objection as to how it functioned. It must be remembered that defendant argues that the rifle discharged as a result of a struggle over control of the weapon and that the shooting was an accident. Certainly, the

testimony as to how this type of weapon functioned would be relevant. It tended to show that the rifle could not have been discharged accidentally in the manner contended by defendant. The assignment of error is without merit and overruled.

[10]   (9) Next defendant assigns errors 19, 22, 23 and 36 for the reason that photographs were received into evidence that did not illustrate prior testimony of witnesses. Defendant argues that the photographs were used as substantive evidence. Specific objection is made to one of the witnesses placing an "X" on a photograph to locate the position of the defendant. Also, defendant objects to the testimony of State's witness Stocks relative to the amount of blood shown in the photograph. Defendant asserts that the testimony of Dr. Parmelee is substantive in nature when he identified blood on the walls and holes in the walls as shown on the photographs.

Defendant's contention that photographs are admissible only to illustrate *prior* testimony is without merit. Where a proper foundation has been laid, photographs may be used contemporaneously with the witness's testimony in order to illustrate his testimony and facilitate his explanation. Ordinarily, photographs are competent to be used by a witness to explain or illustrate anything that is competent for him to describe in words. *State v. Chance,* 279 N.C. 643, 185 S.E. 2d 227 (1971); *State v. Atkinson,* 275 N.C. 288, 167 S.E. 2d 241 (1969).

An examination of the record reveals that a proper foundation was laid and the photographs were in fact used to explain and illustrate the witnesses' testimony. Additionally, although no instruction was mandated since defendant failed to request one, the trial judge properly instructed the jury that the photographs "are not to be considered by you as substantive evidence" and that they are "admissible solely for the purpose of illustrating the testimony of the witnesses if they tend to do so and admissible for no other purpose." *State v. Cox,* 289 N.C. 414, 222 S.E. 2d 246 (1976); *State v. Sanders,* 288 N.C. 285, 218 S.E. 2d 352 (1975), *cert. denied,* 423 U.S. 1091 (1976); *State v. McKissick,* 271 N.C. 500, 157 S.E. 2d 112 (1967).

Defendant has failed to show any error, and these assignments of error are without any merit and overruled.

[11]   (10) Assignment of Error No. 21 is based on 55 exceptions. Defendant complains about testimony relative to teeth

found. The evidence disclosed that the deceased was shot in the face and several teeth were found at the scene. Defendant contends this testimony was offered to arouse sympathy for the State's case and prejudice defendant.

"Relevant evidence will not be excluded simply because it may tend to prejudice the opponent or excite sympathy for the party who offers it." 1 Stansbury's N. C. Evidence, *supra* § 80, at 242. Of course, if the only effect of the evidence is to excite prejudicial sympathy, then it may be grounds for a new trial. 1 Stansbury's N. C. Evidence, *supra* § 80.

Three witnesses testified about the teeth and where they were located. Certainly, this constituted circumstantial evidence that tended to show the direction from which the shot was fired, the range of the shot, and the fact that deceased died from a gunshot wound. This testimony corroborated Dr. Parmelee who testified that the deceased was killed with a gunshot wound in the face. It was relevant and thus admissible. This assignment is without merit and overruled.

[12] (11) Assignment of Error 27 maintains the court should have declared a mistrial because of an incident in the courtroom.

It appears a man was arrested in the courtroom during the course of the trial for carrying a loaded weapon. One of the jurors notified the trial judge that her supervisor had mentioned it to her. As a result, the trial judge interrogated each of the jurors as to their recollection about the incident and its effect upon them. Judge Peel made findings of fact, concluded there had been no prejudice, and denied the motion for a mistrial in his discretion. Certainly there is no showing of any prejudice to defendant by the arrest of some man, unrelated to this case, carrying a loaded weapon in the courtroom. Each juror told the trial judge that he or she could return a fair and impartial verdict uninfluenced by the incident. The court further instructed the jurors that they were not to consider the incident in their deliberations and were not to discuss it further.

A motion for a new trial for an incident such as this is addressed to the sound discretion of the trial court and in the absence of abuse of discretion there is no error. *State v. Branch,* 288 N.C. 514, 220 S.E. 2d 495 (1975) ; 7 Strong, N. C. Index 2d, Trial, §§ 5 and 9 (1968). This assignment is without any merit and overruled.

**[13]** (12) As a result of the previous incident, defendant assigns Error No. 28 for the refusal of the court to sequester the jury. The sequestration of the jury along with the course and conduct of the trial rests in the discretion of the trial court. G.S. 9-17. *See also State v. Gaines,* 283 N.C. 33, 194 S.E. 2d 839 (1973) ; *State v. Taylor,* 280 N.C. 273, 185 S.E. 2d 677 (1972) ; 2 Strong, N. C. Index 2d, Criminal Law § 98, at 633 (1967) and cases therein cited (sequestration of witnesses is discretionary). The assignment is without merit and is overruled.

**[14]** (13) Under Assignment of Error No. 33, defendant contends it was error to permit the District Attorney to threaten potential defendant's witnesses Faison and Vick and thus not accord defendant a fair trial.

It came to the attention of the court that Faison and Vick would possibly be called as witnesses for defendant and that the District Attorney might charge them with being accessories after the fact to murder. The trial judge wisely decided that he should advise those potential witnesses and possible defendants of their rights out of the presence of the jury. In the course of it, the District Attorney stated that Vick stayed in the car and he had no intention of indicting him for anything. The intimation was that possibly Faison might be indicted. It was then that Judge Peel fully advised Faison of his right to have a lawyer. Faison indicated that he did not wish one and was asked to sign a document to that effect.

The judge did exactly what he should have done under the circumstances. This took place out of the presence of the jury. The witnesses were not threatened, and defendant was not prejudiced. As a matter of fact both witnesses testified advantageously for defendant. This assignment of error is without any merit and overruled.

(14) In assignments 42 and 43, defendant contends the court erred in its findings of fact and conclusions of law as to defendant's waiver of his constitutional rights as outlined by the Miranda decision. He contends that on account of this error the court erred in allowing State's witnesses to testify before the jury to statements made by defendant.

Defendant specifically argues that the trial court's finding of fact number 11 that he "understood what his rights were and

that he stated to the officers that he did so understand" was not supported by the facts. This contention is without merit. Officers Sharpe and Griffin both testified that defendant was read his rights and that he acknowledged understanding them.

[15] Defendant next argues that defendant never intelligently and voluntarily waived his right to remain silent. He argues that this conclusion is required both by the evidence and finding of fact number 14, which states:

"14. That in response to the specific question, 'Did he desire to answer the question?' the defendant did not make a specific answer to that question but he continued to state that he did not know anything about the charge against him."

However, in order to determine whether defendant waived his right to remain silent, it is also necessary to look at the other circumstances. At the time this question was asked, defendant had affirmatively waived his right to counsel and affirmatively asknowledged understanding his Miranda rights. Considering these circumstances and the other responses and statements of defendant, including the fact that defendant's only incriminating statements were of an alibi nature as well as denying knowing Zeno Jones or the victim or having been with Linda Faye Carroll, we conclude the evidence supports the substance of finding of fact number 15, which reads:

"15. That in the context in which such response [referring to the response in finding of fact number 14] was made, together with the other circumstances then and there existing, this represented a specific indication that he was willing to answer the questions of the officers and be interrogated; that he did nothing to indicate that he did not want to talk to them; that he was very cooperative and never made any request to the officers to stop asking him any questions."

It therefore follows that the court's conclusions of law are supported by the findings of fact and the evidence. *State v. Patterson,* 288 N.C. 553, 220 S.E. 2d 600 (1975). *See also Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694 (1966). The assignments of error are overruled.

[16] (15) Under assignment 47, defendant maintains the court erred in its instruction to the jury explaining reasonable

doubt. He contends that the judge should have charged as follows in the latter portion of the instruction, "A reasonable doubt . . . is an honest, substantial misgiving generated *out of the evidence* or by the insufficiency of the proof. . . . " He argues that he was prejudiced by the omission of the phrase "out of the evidence." He relies on the converse of the holding in *State v. Hammonds,* 241 N.C. 226, 85 S.E. 2d 133 (1954), which held that it was error for the judge to define reasonable doubt as one "growing out of the testimony in the case" unless the judge added the words "or from the lack or insufficiency of the evidence" or similar words.

It is a well established rule that a charge must be construed in its entirety. *State v. Bailey,* 280 N.C. 264, 185 S.E. 2d 683 (1971), *cert. denied,* 409 U.S. 948, 93 S.Ct. 293, 34 L.Ed. 2d 218 (1972) ; *State v. Leach,* 272 N.C. 733, 158 S.E. 2d 782 (1968) ; *State v. Blue,* 270 N.C. 283, 154 S.E. 2d 99 (1967). When the portion of the instruction to which defendant excepts is considered with the rest of the instruction, it is evident that the charge carries the very meaning that defendant feels was omitted. The judge charged that a reasonable doubt "is a sane, rational doubt arising out of the evidence or lack of evidence or from its deficiency." He emphasized the importance of the jury's "considering, comparing and weighing all the evidence." Obviously, when the judge used the language "insufficiency of proof," he still referred to an insufficiency arising out of the evidence or out of the insufficiency of the evidence. The charge given substantially conforms with language approved by our Court in previous decisions. *State v. Shaw,* 284 N.C. 366, 200 S.E. 2d 585 (1973) ; *State v. McClain,* 282 N.C. 396, 193 S.E. 2d 113 (1972) ; *State v. Britt,* 270 N.C. 416, 154 S.E. 2d 519 (1967) ; *State v. Hammonds, supra.* The assignment is without merit and overruled.

(16) Under assignment 48, defendant argues that the court erred in its jury instructions explaining the elements of the crime of discharging a firearm into an occupied dwelling, particularly as that crime relates to the bill of indictment charging first-degree murder.

The court charged the jury as follows:

"Now, I charge members of the jury that for you to find the defendant guilty of this offense the State must prove beyond a reasonable doubt, first: that the defendant

shot Thelma Jones while committing the crime of discharging a firearm into occupied property, and I instruct you members of the jury that in order for the defendant to be guilty of discharging a firearm into occupied property the State must prove each of the following things from the evidence and beyond a reasonable doubt:

"1. That the defendant *intentionally used a firearm* and I instruct you that a 30.30 rifle is a firearm and that, 2. That he did it without legal excuse or justification, and 3. *That he discharged the firearm* into a dwelling which was at the time occupied, and 4. He did so at a time when he knew or had reasonable grounds to believe that the dwelling might be occupied by one or more persons; and 5. That the discharge of the firearm by the defendant proximately caused Thelma Jones' death.

"A proximate cause is a real cause, a cause without which Thelma Jones' death would not have occurred.

"Now, members of the jury, the defendant contends that he did not actually fire the rifle into the dwelling. He further contends that he was trying to prevent Linda Carroll from using the rifle on that occasion and that whatever occurred did so as a result of an accident while he and Linda Faye Carroll were struggling for the rifle. If Thelma Jones died by accident or misadventure, that is *if* the rifle discharged at a time when the defendant and Linda Faye Carroll were struggling for the rifle and *the defendant did not intentionally fire the rifle into the dwelling, the defendant would not be guilty of first degree murder."* (Emphasis added.)

\*     \*     \*

"And so members of the jury, *if* the State has satisfied you beyond a reasonable doubt that on or about June the 3, 1975 Tamarcus Swift shot Thelma Jones, and that *he did so while committing the crime of discharging a firearm into occupied property, that is that he intentionally used a firearm and that he did so without legal justification or excuse,* and that he discharged the firearm into the dwelling of Zeno Jones which was at the time occupied and that he did so at a time when he knew or had reasonable grounds to believe that the dwelling might be occupied by one or more persons, and that such dis-

charge of the firearm by the defendant proximately caused Thelma Jones' death, it would be your duty to return a verdict of guilty of murder in the first degree; however, if you do not find or have a reasonable doubt as to any one or more of these things you would not find the defendant guilty of this charge, and you would then consider whether or not the defendant is guilty of involuntary manslaughter." (Emphasis added.)

\*    \*    \*

"[F]or you to find the defendant guilty of discharging a firearm into occupied property the State must prove each of the following things beyond a reasonable doubt:

"1. That the defendant *intentionally used a firearm*, and I instruct you that a 30.30 rifle is a firearm; and 2. That he did so without legal justification or excuse, and, 3. That he *discharged the firearm* into a dwelling which was at the time occupied and 4. That he did so at that, at a time when he knew or had reasonable grounds to believe that the dwelling might be occupied by one or more persons.

"Now, the defendant members of the jury again contends as he did in relation to the charge of first degree murder. *You will consider my instructions as to* that as referring to *his contentions* on this charge; *that he didn't intentionally fire the rifle into the dwelling;* that he did not fire the rifle; that he was trying to prevent Linda Faye Carroll from using the rifle, and whatever did occur did so as a result of an accident while he and Linda Carroll were struggling for the rifle.

"Likewise by his plea he denies each essential element of the crime with which he is charged, and as to that charge members of the jury if the State has satisfied you beyond a reasonable doubt that on or about June the 3, 1975, the defendant, Tamarcus Swift *intentionally used a firearm*, and that he did so without legal justification or excuse, and *that he discharged the firearm* into the dwelling of Zeno Jones which was at the time occupied and that he did so at a time when he knew or had reasonable grounds to believe that the dwelling might be occupied by one or more persons, it would be your duty to return as your verdict a verdict of guilty as charged as to this charge." (Emphasis added.)

\* \* \*

"And so members of the jury, first as to the bill of indictment with which the defendant is charged with first degree murder, and so as to that charge, members of the jury, if the State has satisfied you beyond a reasonable doubt that on or about June the 3, 1975 Tamarcus Swift shot Thelma Jones, and *that he did so while committing the crime of discharging a firearm into occupied property, that is that he intentionally used a firearm and that he did so without legal justification or excuse and that he discharged the firearm* into the dwelling of Zeno Jones which was at the time occupied and that he did so at a time when he knew or had reasonable grounds to believe that the dwelling might be occupied by one or more persons, and further that such discharging of the firearm by the defendant proximately caused Thelma Jones' death, it would be your duty to return a verdict of guilty of murder in the first degree. However, if you do not so find or have a reasonable doubt as to any one or more of these things, you would not find the defendant guilty of this charge and you would then consider whether or not the defendant is guilty of involuntary manslaughter." (Emphasis added.)

\* \* \*

"Now, members of the jury, as to the other charge, that is the charge of discharging a firearm into occupied property, as to that charge members of the jury I charge you that if the State has satisfied you beyond a reasonable doubt that on or about June the 3, 1975 that the defendant *intentionally used a firearm* and that he did so without legal justification or excuse and *that he discharged the firearm* into the dwelling of Zeno Jones which was at the time occupied and that he did so at a time when he knew or had reasonable grounds to believe that the dwelling might be occupied by one or more persons, it would be your duty to return a verdict of guilty of discharging a firearm into occupied property or guilty as charged. By that I mean if the State has satisfied you beyond a reasonable doubt as to each and every one of those elements which I have outlined and heretofore explained to you it is your duty to return a verdict of guilty as charged on this charge." (Emphasis added.)

General Statutes 14-34.1 provides:

"Any person who wilfully or wantonly discharges a firearm into or attempts to discharge a firearm into any building, structure, vehicle, aircraft, watercraft or other conveyance device, equipment, erection, or enclosure while it is occupied, is guilty of a felony punishable as provided in § 14-2."

[17] Defendant contends that *State v. Williams,* 284 N.C. 67, 199 S.E. 2d 409 (1973), as interpreted by *State v. Williams,* 21 N.C. App. 525, 204 S.E. 2d 864 (1974) (a different *Williams*) establishes that the instruction should be that the defendant intentionally, without legal justificaton or excuse, discharged the firearm into an occupied dwelling. Defendant submits that the utilization of the term "intentionally used a firearm" is incorrect and prejudicial.

In *State v. Williams,* 21 N.C. App. 525, *supra,* error was found because of the following instructions: " . . . and fourth, and last, that the defendant acted willfully or wantonly which means that he must have known that one or more persons were in the dwelling or apartment." The Court of Appeals held that the instruction did not comply with the language in *State v. Williams,* 284 N.C. 67, *supra* at 73, 199 S.E. 2d at 412, which provided that a person is guilty of the felony created by G.S. 14-34.1 "if he intentionally, without legal justification or excuse discharges a firearm into an *occupied building* with knowledge that the building is then occupied by one or more persons or when he had reasonable grounds to believe that the building might be occupied by one or more persons." In *State v. Williams,* 21 N.C. App. 525, *supra* at 527, 204 S.E. 2d at 865, the language which the court objected to was equating "willful and wanton conduct" with "knowledge of occupancy." There was nothing in either of the *Williams* cases banning the terminology "used a firearm."

Although a preferable charge would have used the language "intentionally discharged a firearm," we see no prejudicial error in this case by the use of the language "intentionally used a firearm."

Before the final mandate on murder, when charging the jury as to accident and misadventure, the court instructed the jury that if "the defendant did not intentionally fire the rifle into the dwelling, the defendant would not be guilty of first

degree murder." When the charge is read contextually, it becomes clear that the words "intentionally used a firearm," as used by the trial judge, were synonymous with the words "intentionally fired or discharged a firearm." There was no reason for the jury to misunderstand the instruction. No prejudicial error is shown, and this assignment is overruled.

[18]   (17) Under assignment 49, defendant asserts that the court erred in its instruction on accident or misadventure.

The court declined to give the following requested instruction by defendant:

"If Tamarcus Swift unintentionally proximately caused Thelma Jean Jones' death by use of a rifle, in a manner which was not reckless or wanton with no wrongful purpose, and while engaged in a lawful pursuit homicide would be excused on the ground of accident or misadventure."

In lieu thereof, the court charged as follows:

"Now, members of the jury, the defendant contends that he did not *actually* fire the rifle into the dwelling. He further contends that he was trying to prevent Linda Carroll from using the rifle on that occasion and that whatever occurred did so as a result of an accident while he and Linda Faye Carroll were struggling for the rifle. If Thelma Jones died by accident or misadventure, that is if the rifle discharged at a time when the defendant and Linda Faye Carroll were struggling for the rifle and the defendant did not intentionally fire the rifle into the dwelling, the defendant would not be guilty of first degree murder." (Emphasis added.)

Defendant particularly complains because the trial judge used the word *actually* rather than the word *intentionally*.

It must be remembered that the trial judge was stating the contentions of defendant when he used the word "actually." When defendant testified, he said, "I did not have my hand on the trigger. Linda's hands were on the gun." He later testified on cross-examination as follows: "I didn't ever touch any part of the rifle down there on the trigger mechanism. . . . I didn't fire it. I didn't have my hands around the trigger." Certainly, the contention stated conforms with defendant's testimony.

Later in the instruction, the judge charged on involuntary manslaughter as follows:

"Now, members of the jury, involuntary manslaughter is the unintentional killing of a human being by an act done in a criminally negligent way. Now, I charge that for you to find the defendant guilty of involuntary manslaughter the State must prove two things beyond a reasonable doubt: First, that the defendant acted in a criminally negligent way. Criminal negligence is more than mere carelessness. The defendant's act was criminally negligent if it was done with such recklessness or carelessness as showed a thoughtless disregard of consequences or a heedless indifference for the safety and rights of others. . . . "

Under this later instruction, in order for the State to secure a conviction, the jury had to believe that defendant unintentionally killed a human being in a criminally negligent manner.

The instructions given substantially comported with defendant's requested instruction, and the assignment of error is overruled.

(18) Under assignment 53, defendant contends that the court erred in its instruction to the jury on possible verdicts for discharging a firearm into occupied property.

The record discloses that after the judge had completed his instruction on involuntary manslaughter, he proceeded to the other charge in the following language:

"Members of the jury, in the other bill of indictment, members of the jury the defendant is charged with discharging a firearm into occupied property. As to that charge members of the jury, on that charge there are three possible verdicts: one is guilty of first degree murder, guilty of involuntary manslaughter and not guilty."

In the next paragraph, the court proceeds to give the proper mandate as to the charge of discharging a firearm into an occupied dwelling. Later in the recapitulation, the court properly separated the two cases and told the jury the possible verdicts in each one.

The original *lapsus linguae* resulted in no prejudice to defendant. The assignment of error is overruled.

**[19]** (19) Under assignment of error 55, defendant complains about the following language in the judge's instruction: *"Any verdict you arrive at* must be unanimous; in other words it, there must be a meeting of the minds." (Emphasis added.)

Defendant contends this instruction could have caused the jurors to believe that there *must* be a meeting of the minds and as a result the jury voted for a verdict of guilty.

The language immediately preceding this instruction was as follows, "[W]hen you go to your room your duty is to arrive at a just verdict in this case and in doing that you are to try to arrive at the truth of the matter."

A charge must be considered contextually, and when this is done, it is clear that no force was applied by the judge. *State v. Branch, supra; State v. Sanders,* 288 N.C. 285, 218 S.E. 2d 352 (1975), *cert. denied,* 423 U.S. 1091, 96 S.Ct. 886, 47 L.Ed. 2d 102 (1976). Judge Peel was just telling the jury *any verdict reached* must be unanimous. He did not say a verdict had to be reached.

The assignment is without any merit and overruled.

**[20]** (20) Under assignments 56, 57 and 58, defendant contends that the felony-murder rule as set forth in General Statutes 14-17 is an unconstitutional denial of due process and equal protection of the law; that the court erred by omitting from its instruction that in order to find defendant guilty of first-degree murder the jury must find defendant killed Thelma Jones with malice, premeditation and deliberation; and that the court erred in failing to instruct the jury that they could return verdicts of second-degree murder and voluntary manslaughter.

General Statutes 14-17 provides:

"A murder which shall be perpetrated by means of poison, lying in wait, imprisonment, starving, torture, or by any other kind of willful, deliberate and premeditated killing, or which shall be committed in the perpetration or attempt to perpetrate any arson, rape, robbery, kidnapping, burglary or other felony, shall be deemed to be murder in the first degree and shall be punished with death."

A violation of this section is an unspecified felony within the purview of General Statutes 14-17 and therefore can result

in conviction for first degree murder under the felony-murder rule. *State v. Williams*, 284 N.C. 67, 199 S.E. 2d 409 (1973).

Defendant contends that General Statutes 14-17 establishes a presumption of premeditation and deliberation and thus violates the requirement of the due process clause of the Fourteenth Amendment that the prosecution prove beyond a reasonable doubt every fact necessary to constitute the crime charged. *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed. 2d 508 (1975).

We do not believe that *Mullaney* applies to this situation because G.S. 14-17 is a rule of law and not a presumption. If G.S. 14-17 is compared with murder in the first degree based on premeditation and deliberation, it might be said that the practical effect of G.S. 14-17 is that premeditation and deliberation are presumed when a murder is committed in the perpetration of a felony described under G.S. 14-17. *State v. Doss*, 279 N.C. 413, 183 S.E. 2d 671 (1971). However, G.S. 14-17 actually involves no presumption at all. Under G.S. 14-17 premeditation and deliberation are not elements of the crime of felony-murder. Thus, the contention of defendant that the act of firing a firearm into an occupied dwelling has no rational connection with premeditation and deliberation is without merit. The only requirement for purposes of G.S. 14-17 is that the felony involved be one of the specified felonies or an unspecified felony within the purview of G.S. 14-17. We have held in *State v. Williams, supra,* that G.S. 14-34.1 is such a felony because of the reasonable correlation between committing a crime under G.S. 14-34.1 and the possibility of death occurring.

[21]  It is a well established rule that when the law and evidence justify the use of the felony-murder rule, then the State is not required to prove premeditation and deliberation, and neither is the court required to submit to the jury second-degree murder or manslaughter unless there is evidence to support it. *State v. Doss*, 279 N.C. 413, 183 S.E. 2d 671 (1971). Justice Parker (later Chief Justice), speaking for our Court, said in *State v. Maynard*, 247 N.C. 462, 469, 101 S.E. 2d 340, 345 (1958):

> "Where a murder is committed in the perpetration or an attempt to perpetrate a robbery from the person, G.S. 14-17 pronounces it murder in the first degree, irrespective

of premeditation or deliberation or malice aforethought. [Citations omitted.]"

[22]   Again our Court held, speaking through Justice Ervin in *State v. Streeton,* 231 N.C. 301, 305, 56 S.E. 2d 649, 652 (1949) :

"It is evident that under this statute a homicide is murder in the first degree if it results from the commission or attempted commission of one of the four specified felonies or of any other felony inherently dangerous to life, without regard to whether the death be intended or not."

Certainly, shooting into an occupied dwelling meets these standards.

Our Court held in *State v. Thompson,* 280 N.C. 202, 211, 185 S.E. 2d 666, 672 (1972), speaking through Chief Justice Bobbitt:

"We have held that a felony which is inherently dangerous to life is within the purview of G.S. 14-17 although not specified therein. [Cases cited.] However, as indicated in *State v. Doss, supra* at 427, 183 S.E. 2d 679, no decision of this Court purports to hold that the only unspecified felonies within the purview of G.S. 14-17 are felonies which are inherently dangerous to life. In our view, and we so hold, any unspecified felony is within the purview of G.S. 14-17 if the commission or attempted commission thereof creates any substantial foreseeable human risk and actually results in the loss of life. This includes, but is not limited to, felonies which are inherently dangerous to life. Under this rule, any unspecified felony which is inherently dangerous to human life, or foreseeably dangerous to human life due to the circumstances of its commission, is within the purview of G.S. 14-17."

North Carolina decisions have consistently upheld the felony-murder doctrine involving a felony inherently dangerous to life. For example: breaking, entering and larceny, *State v. Thompson, supra;* robbery, *State v. Rich,* 277 N.C. 333, 177 S.E. 2d 422 (1970) ; escape from prison, *State v. Lee, supra;* rape, *State v. Knight,* 248 N.C. 384, 103 S.E. 2d 452 (1958) ; kidnapping, *State v. Streeton, supra;* arson, *State v. Anderson,* 228 N.C. 720, 47 S.E. 2d 1 (1948).

State v. Swift

In this case there was no necessity for a charge on second-degree murder or voluntary manslaughter because there was no evidence of either of these crimes. *State v. Doss, supra.* Thus, Judge Peel submitted the case to the jury under the only possible verdicts open to him under all the evidence in the case.

The assignments of error are overruled.

[23] Assignment of Error No. 2 contends that the sentence of death for the crime of murder in the first degree violates the Eighth and Fourteenth Amendments to the Constitution of the United States.

This assignment must be sustained. *Woodson v. North Carolina, supra; State v. Davis,* 290 N.C. 511, 227 S.E. 2d 97, decided this day. Thus, defendant's motion in arrest of the judgment imposing the death penalty must be allowed. The judgment imposing the sentence of death is vacated and, under the authority of 1973 North Carolina Sess. Laws, Ch. 1201, § 7 (1974 Sess.), a sentence of life imprisonment must be substituted in lieu thereof.

Accordingly, it is hereby ordered that this case be remanded to the Superior Court of Wayne County with directions (1) that the presiding judge, without requiring the presence of defendant, enter a judgment imposing life imprisonment for the first degree murder for which he has been convicted; and (2) that in accordance with this judgment the Clerk of the Superior Court issue commitment in substitution for the commitment heretofore issued. It is further ordered that the Clerk furnish to the defendant and his attorneys of record a copy of the judgment and commitment as revised in accordance with this order.

The defendant's brief has other assignments of error as follows, Numbers 8, 11, 14, 15, 37, 17, 34, 18, 26, 39, 41, 50, 51, 52, 59, 60, and 61. We have examined all of these and find no merit in any of them. In addition, we have searched the record for other errors and have found none prejudicial to defendant.

In the trial we find

No error.

Death sentence vacated and in lieu thereof life sentence imposed.