IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 118,180

STATE OF KANSAS,
*Appellee*,

v.

LONDRO EMANUEL PATTERSON III,
*Appellant.*

SYLLABUS BY THE COURT

1.

The felony-murder statute, K.S.A. 2018 Supp. 21-5402(a)(2), requires proof that the defendant engaged in dangerous, felonious conduct and that a death occurred as a result of that conduct. Intent to kill is not an element of felony murder.

2.

The Kansas felony-murder statute does not operate as an unconstitutional, conclusive presumption that invades the jury's province.

3.

A trial judge's jury instruction that states, "It is my duty to instruct you in the law that applies to this case, and it is your duty to consider and follow all of the instructions. You must decide the case by applying these instructions to the facts as you find them," is legally correct.

4.

It is not prosecutorial error to state to a prospective juror, "So we don't have that luxury as a juror when it comes to jury instructions. And what that means is at the end of

1

the trial you will get a packet of jury instructions and that is the law in the case. You don't get to go back and debate that."

5.

The test for a disproportionality challenge based on § 9 of the Kansas Constitution Bill of Rights includes both legal and factual inquiries. An argument that a sentence violates § 9 because it is cruel or unusual cannot be raised for the first time on appeal.

6.

A hard 25 life sentence is not categorically disproportionate when applied to young adults convicted of felony murder.

Appeal from Johnson District Court; TIMOTHY P. MCCARTHY, judge. Opinion filed January 10, 2020. Affirmed.

*Peter T. Maharry*, of Kansas Appellate Defender Office, argued the cause, and *Carol Longenecker Schmidt*, of the same office, was on the brief for appellant.

*Jacob M. Gontesky*, assistant district attorney, argued the cause, and *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

BILES, J.: Londro Patterson appeals from his convictions and sentence arising from an armed robbery in which a victim was killed by an accomplice. He argues: (1) his felony-murder conviction violates due process because a jury was not required to determine he possessed a particular criminal mental state; (2) the district court's instructions to the jury and a prosecutor's voir dire comments improperly prevented the jury from exercising its nullification power; (3) his hard 25 life sentence for felony murder is disproportionate to his crime in violation of § 9 of the Kansas Constitution Bill

2

of Rights and the Eighth Amendment to the United States Constitution; and (4) his Sixth Amendment rights under *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), were violated when prior convictions were used to elevate his sentence without being proved to a jury beyond a reasonable doubt. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Patterson and three accomplices—De'Anthony Wiley, Hakeem Malik, and Nicquan Midgyett—tried to rob a Shawnee gun store, She's A Pistol, at gunpoint. Jon Bieker and his wife, Rebecca, were the store's proprietors. Jon was killed.

The incident began when Wiley entered the store dressed as a female and feigned interest in some merchandise. Rebecca attended to him. Wiley pulled out a phone from his pocket and began speaking into it. Patterson, Malik, and Midgyett then entered the store. Wiley and Patterson pointed weapons at Rebecca. Midgyett punched Rebecca and knocked her unconscious. Jon emerged from the store's back room with a gun. The robbers fled as shots were exchanged.

Wiley fatally shot Jon. Wiley was shot and found inside the store. Midgyett was shot and found with Malik at a nearby house. Patterson sustained two gunshot wounds. Police found him lying in the grass near the store. Jon fired at least one bullet that hit Patterson. The State charged Patterson with felony murder, attempted aggravated robbery, conspiracy to commit aggravated robbery, and aggravated battery.

During trial, Patterson's counsel admitted Patterson conspired and attempted to rob She's A Pistol but argued he should not be liable for Jon's death because his participation ended when he left the store. The jury convicted Patterson of felony murder, conspiracy

3

to commit robbery, attempted aggravated robbery, and a lesser form of aggravated battery.

At a separate sentencing proceeding, the jury declined to find two aggravating circumstances alleged by the State: Patterson was not amenable to probation and he presented a danger to the community. The only additional evidence introduced at this sentencing proceeding was testimony from an administrator in the office that supervised Patterson's Missouri probation and Patterson's mother. The probation administrator testified Patterson was on probation for a weapons violation, failed to report several times, and traveled outside the state without permission. His mother testified Patterson was 19 when he committed the crimes at She's A Pistol and had outgrown his clothes while in jail awaiting trial.

The district court sentenced Patterson to life imprisonment with 25 years before parole eligibility for the murder conviction and consecutive 47-, 34-, and 13-month prison terms for the remaining three convictions.

Patterson timely appealed. Jurisdiction is proper. K.S.A. 2018 Supp. 22-3601(b)(3) (Supreme Court has jurisdiction over life imprisonment cases); K.S.A. 2018 Supp. 22-3601(b)(4) (Supreme Court has jurisdiction over off-grid crimes); K.S.A. 2018 Supp. 21-5402(b) (felony murder is an off-grid crime).

THE FELONY-MURDER CONVICTION

Patterson argues for the first time on appeal that his due process rights were violated when he was convicted of first-degree murder under the felony-murder statute. He claims this occurs because felony murder does not require proof beyond a reasonable doubt that the defendant "intentionally, knowingly, or recklessly" caused the victim's

4

death. See K.S.A. 2018 Supp. 21-5202(a). The essence of Patterson's claim is that Kansas law requires an intent-to-kill element for homicide that the jury is not informed about in the felony-murder context because, he alleges, that intent is conclusively presumed based only on the jury's finding the defendant was participating in an inherently dangerous felony.

*Preservation*

Patterson acknowledges this issue is advanced for the first time on appeal, which raises a preservation concern. Generally, the court declines to address constitutional issues for the first time on appeal. *State v. Thach*, 305 Kan. 72, 81, 378 P.3d 522 (2016). But an appellate court may do so if the party attempting to raise the issue demonstrates at least one of three recognized exceptions:

> "'(1) [T]he newly asserted claim involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) the claim's consideration is necessary to serve the ends of justice or to prevent the denial of fundamental rights; or (3) the district court's judgment may be upheld on appeal despite its reliance on the wrong ground or reason for its decision.' *State v. Anderson*, 294 Kan. 450, 464-65, 276 P.3d 200 (2012)." *State v. Hirsh*, 310 Kan. 321, 338, 446 P.3d 472 (2019).

See *Thach*, 305 Kan. at 81 (party asserting issue must explain why exception applies).

Patterson invokes the first exception. And the State does not object. But the State's failure to object does not control. Deciding whether due process has been afforded is a question of law over which a court has unlimited review. *Stewart v. State*, 310 Kan. 39, 43, 444 P.3d 955 (2019). In this instance, we have decided to proceed to the merits.

5

*Discussion*

Due process demands the State prove every element of the charged crime. *State v. Banks*, 306 Kan. 854, 858, 397 P.3d 1195 (2017) (citing *In re Winship*, 397 U.S. 358, 361-64, 90 S. Ct. 1068, 25 L. Ed. 2d 368 [1970]). The United States Supreme Court has held that when intent is an element of an offense,

"the trial court may not withdraw or prejudge the issue by instruction that the law raises a presumption of intent from an act. . . . A conclusive presumption which testimony could not overthrow would effectively eliminate intent as an ingredient of the offense. . . . [T]his presumption would conflict with the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime." *Morissette v. United States*, 342 U.S. 246, 274-75, 72 S. Ct. 240, 96 L. Ed. 288 (1952).

And the Court has held that in a prosecution for deliberate homicide requiring proof the defendant "purposely or knowingly" caused the victim's death, it was improper to instruct the jury that "'the law presumes that a person intends the ordinary consequences of his voluntary acts.'" *Sandstrom v. Montana*, 442 U.S. 510, 512, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979). The Court reasoned that,

"Upon finding proof of one element of the crime (causing death), and of facts insufficient to establish the second (the voluntariness and 'ordinary consequences' of defendant's action), [the jury] could reasonably have concluded that they were directed to find against defendant on the element of intent. The State was thus not forced to prove 'beyond a reasonable doubt . . . every fact necessary to constitute the crime . . . charged' and defendant was deprived of his constitutional rights . . . . [Citation omitted.]" 442 U.S. at 523.

Patterson claims the felony-murder statute operates in this prohibited manner. In Kansas, "[m]urder in the first degree is the killing of a human being committed: (1)

6

Intentionally, and with premeditation; or (2) in the commission of, attempt to commit, or flight from any inherently dangerous felony." K.S.A. 2018 Supp. 21-5402(a). Our caselaw has long recognized that,

> "[i]n felony-murder cases, the elements of malice, deliberation, and premeditation which are required for murder in the first degree are deemed to be supplied by felonious conduct alone if a homicide results. To support a conviction of felony murder, all that is required is to prove that a felony inherently dangerous to human life was being committed and that the homicide which followed was a direct result of the commission of that felony." *State v. Hobbs*, 248 Kan. 342, 345-46, 807 P.2d 120 (1991), *overruled on other grounds by State v. Berry*, 292 Kan. 493, 254 P.3d 1276 (2011).

See also *State v. Hoang*, 243 Kan. 40, 41-42, 755 P.2d 7 (1988) (same).

The court has explained that "[f]elony murder . . . transfers the intent to commit an inherently dangerous felony to an unintended death that occurs during the commission of the underlying felony. It is felonious intent, rather than homicidal intent, that provides the malice and intent required for a first-degree felony-murder conviction." *State v. Seba*, 305 Kan. 185, 196, 380 P.3d 209 (2016).

Patterson points out that under Kansas law, "[e]xcept as otherwise provided, a culpable mental state is an essential element of every crime defined by [the criminal] code. A culpable mental state may be established by proof that the conduct of the accused person was committed 'intentionally,' 'knowingly' or 'recklessly.'" K.S.A. 2018 Supp. 21-5202(a). And "[i]f the definition of a crime does not prescribe a culpable mental state, a culpable mental state is nevertheless required unless the definition plainly dispenses with any mental element." K.S.A. 2018 Supp. 21-5202(d). Patterson contends that by "transferring the intent to commit the underlying felony to prove the intent required to commit felony murder, Kansas formally retains a *mens rea* element for felony murder."

7

He adds that withholding this element from the jury amounts to a violation of his rights to due process and to a jury trial.

Kansas law has contained a provision much like K.S.A. 2018 Supp. 21-5202 since 1970. Its predecessor, K.S.A. 21-3201 (Ensley), stated:

"Except as provided . . . a criminal intent is an essential element of every crime defined by this code. Criminal intent may be established by proof that the conduct of the accused person was willful or wanton. Proof of willful conduct shall be required to establish criminal intent, unless the statute defining the crime expressly provides that the prohibited act is criminal if done in a wonton manner."

The 1968 Judicial Council note on the statute explains,

"At common law, it was the general rule that acts are criminal only when they are accompanied by a blameworthy state of mind—specific intent, knowledge, willfulness, culpable negligence, general mens rea, etc. These concepts are vague and often misunderstood. Kansas decisions establish three categories of blameworthy conduct: to wit, willfulness, wantonness and negligence. The section seeks to codify and clarify the Kansas law." K.S.A. 21-3201 (Ensley).

Malice aforethought against the deceased was not an element of felony murder at common law. *Seba*, 305 Kan. at 195. And Kansas caselaw predating the adoption of K.S.A. 2018 Supp. 21-5202 has consistently construed the felony-murder statute to mean that the evidence of the underlying felony will stand in place of the malice, intent, premeditation, and deliberation otherwise required to commit first-degree murder. See, e.g., *State v. Wesson*, 247 Kan. 639, 643, 802 P.2d 574 (1990); *State v. Bradford*, 219 Kan. 336, 343, 548 P.2d 812 (1976); see also *State v. Thomas*, 302 Kan. 440, 446, 353 P.3d 1134 (2015) (Explaining in discussing the predecessor to the current first-degree

8

murder statute that "[i]n interpreting the plain language of K.S.A. 21-3401, we have long held that the 'statute merely provides alternative methods of proving the deliberation and premeditation required for a conviction of first-degree murder.'"). Cast in the terminology of the first-degree murder formulation in K.S.A. 2018 Supp. 21-5402, the underlying felony required for a conviction under subsection (a)(2) suffices to prove first-degree murder. Proof of the intent and premeditation required under subsection (a)(1) is not required under subsection (a)(2).

But this statutory formulation does not carry with it a presumption that offends due process or jury trial guarantees. Both state and federal courts have rejected arguments that the felony-murder rule presumes the existence of an intent to kill, or any other intent necessary for the crime of murder, in violation of the Due Process Clause. *State v. Wanrow*, 91 Wash. 2d 301, 311-12, 588 P.2d 1320 (1978). One court has observed that "the courts which have addressed this issue universally held" that felony-murder statutes are constitutional notwithstanding the "'presumption'" arising from the fact that "'malicious and premeditated intent . . . [is] by implication of law transferred from'" an underlying felony to the homicide. *People v. Benson*, 125 Misc. 2d 843, 847, 480 N.Y.S.2d 811 (N.Y. Sup. Ct. 1984). "The rationale of these decisions is that since intent is not an element of the crime in reality there is no presumption of intent. Other courts hold their statute constitutional because the presumption is a rule of law and not a true presumption." 125 Misc. 2d at 848.

In *Wanrow*, the Washington Supreme Court reasoned that

> "intent to kill is not an element of [the crime.] The intent necessary to prove the felony-murder is the intent necessary to prove the underlying felony. That intent must be proved by the state as a necessary element of the crime, and the question whether it was present is presented to the jury." *Wanrow*, 91 Wash. 2d at 311.

9

In *State v. Swift*, 290 N.C. 383, 407, 226 S.E.2d 652 (1976), the North Carolina Supreme Court concluded the felony-murder rule

"is a rule of law and not a presumption. If [the statute] is compared with murder in the first degree based on premeditation and deliberation, it might be said that the practical effect of [the statute] is that premeditation and deliberation are presumed when a murder is committed in the perpetration of a felony . . . . However, [the statute] actually involves no presumption at all. Under [the statute] premeditation and deliberation are not elements of the crime of felony-murder. . . . The only requirement for purposes of [the statute] is that the felony involved be one of the specified felonies or an unspecified felony within the purview of [the statute]."

And in *State v. Burkhart*, 325 Mont. 27, 103 P.3d 1037 (2004), the Montana Supreme Court distinguished the felony-murder rule's transfer of felonious intent from the presumptions disapproved by the United States Supreme Court. The court first noted that under the rule, the defendant's "purpose and knowledge to commit felony-murder was presumed when he assaulted [the victim] . . . , causing [the victim's] death." 325 Mont. at 40-41. And because a felony-murder defendant's conduct creates a dangerous circumstance, "'the intent to commit the felony supplies the intent for all the consequences, including homicide, arising therefrom.'" 325 Mont. at 41 (quoting *State v. Nichols*, 225 Mont. 438, 449, 734 P.2d 170 [1987]). The court explained,

"[E]ven if the [felony-murder] statute is viewed as creating a presumption, the presumption at issue here is not analogous to that derided in *Sandstrom*. The quote from our holding in *Nichols*, which the dissent uses to validate its contention the felony-murder rule creates and retains a conclusive presumption of the defendant's murderous intent, actually strengthens our holding here. If the felony-murder rule creates a presumption, it does not operate to shift a burden from the state to the defendant, but rather 'substitute[s] proof of the mental state necessary to commit a homicide with proof of the mental state

10

required to commit the underlying felony.' *Nichols*, 225 Mont. at 450. The Legislature has determined a killing committed during a felony is deliberate homicide, felony-murder, and we are not convinced the statute, were it to be challenged facially, *may be* unconstitutional simply because it creates criminal liability for deliberate homicide when the state has not shown the accused had the intent to kill. See also *State v. Reeves* (1990), 234 Neb. 711, 453 N.W.2d 359 (felony murder requires only the intent to commit the underlying felony; once that intent is proved, it is imputed to the killing, and *Sandstrom* is inapplicable), *vacated on other grounds*, 498 U.S. 964, 111 S. Ct. 425, 112 L. Ed. 2d 409 (1990); *People v. Benson* (N.Y. 1984), 125 Misc. 2d 843, 480 N.Y.S.2d 811 (intent is not an element of the crime of felony murder, and *Sandstrom* not implicated); *Commonwealth v. Rawls* (1984), 328 Pa. Super. 469, 477 A.2d 540 (equating of intent to kill with intent to commit a serious felony is permissible legislative decision reflecting the gravity of killing during a serious felony); *State v. Sheffield* (Tenn. 1984), 676 S.W.2d 542 (statute makes killing during a felony first degree murder and does not have the effect of shifting burden of proof to defendant). Thus, because the felony-murder rule does not in fact raise a presumption of the existence of an element of the crime, it does not violate the due process clause." 325 Mont. at 42.

The Kansas felony-murder rule does not operate as an unconstitutional, conclusive presumption that invades the jury's province. As the State points out, intent to kill is not an element of felony murder in this state. The statute expressly requires proof the defendant engaged in dangerous, felonious conduct and that a death occurred as a result of that conduct.

By codifying participation in the felony as a statutory alternative for the intent and premeditation otherwise required for a first-degree murder conviction, the statute imposes a rule of law. It does not remove from the jury's consideration an intent element required by a criminal statute.

11

Patterson argues the district court committed clear error when it instructed the jury it had a "duty" to follow the law as set out in the instructions and that it "should find the defendant guilty" if the State proved all elements of the charged offenses. He contends this undermined the jury's nullification power. His argument has no merit.

*Additional facts*

Before trial, the district court issued preliminary instructions to the jury, which included:

> "Now that you have been chosen as jurors for this trial, you are required to decide this case only on the evidence admitted. *At the end of the case, I will instruct you on the law that you must apply to the evidence in order to reach a verdict.* For your verdict to be fair, you must not be exposed to any information about the case, the law, or any of the issues involved in this trial beyond that which is admitted during the trial." (Emphasis added.)

After both parties presented their evidence, the court instructed the jury, "It is my duty to instruct you in the law that applies to this case, and *it is your duty to consider and follow all of the instructions. You must decide the case by applying these instructions to the facts as you find them.*" (Emphasis added.) The court also told the jury,

> "The State has the burden to prove the defendant is guilty. The defendant is not required to prove he is not guilty. You must presume that he is not guilty unless you are convinced from the evidence that he is guilty.

> "The test you must use in determining whether the defendant is guilty or not guilty is this: If you have a reasonable doubt as to the truth of any of the claims required

12

to be proved by the State, you must find the defendant not guilty. *If you have no reasonable doubt as to the truth of each of the claims required to be proved by the State, you should find the defendant guilty.*" (Emphasis added.)

Patterson did not object to either instruction.

*Standard of review*

"'Generally, an appellate court reviewing a jury instruction challenge must determine whether the issue was preserved; whether the instruction was legally and factually appropriate; and whether any error was harmless.' Preservation and reversibility are interrelated. When a party fails to object to a jury instruction at trial, we only reverse if the instruction is clearly erroneous, meaning, [the reviewing court] must be '"firmly convinced that the jury would have reached a different verdict had the instruction error not occurred."' [Citations omitted.]" *State v. Boothby*, 310 Kan. 619, 630, 448 P.3d 416 (2019).

*Discussion*

While a jury has "'the raw physical power' to nullify, or disregard, the law," there is no "'right' to jury nullification." *Boothby*, 310 Kan. at 630-31. The court has "long held that an instruction telling the jury that it may nullify is legally erroneous . . . because 'it is the proper function and duty of a jury to accept the rules of law given to it in the instructions by the court, apply those rules of law in determining what facts are proven and render a verdict based thereon.'" 310 Kan. at 630. But an instruction that essentially forbids the jury from exercising its nullification power is not legally appropriate. See *State v. Smith-Parker*, 301 Kan. 132, 164, 340 P.3d 485 (2014).

In *Smith-Parker*, the court instructed that the jury "'*will* enter a verdict of guilty'" absent a reasonable doubt that the state had proven its claims. 301 Kan. at 150. This

instruction, the court held, appeared to "[direct] a verdict for the State," because "[a] judge cannot compel a jury to convict, even if it finds all elements proved beyond a reasonable doubt." 301 Kan. at 164. In reaching its conclusion, the court disapproved of prior caselaw holding "must" and "should" could be used interchangeably in the reasonable-doubt jury instruction, commenting that an instruction that the jury "must" convict would have the same improper effect. See 301 Kan. at 164 (discussing *State v. Lovelace*, 227 Kan. 348, 607 P.2d 49 [1980]).

But in *Boothby*, the court distinguished *Smith-Parker* and held there was no error instructing the jury that its "'verdict must be founded entirely upon the evidence admitted and the law as given in [the] instructions.'" 310 Kan. at 631. The *Boothby* instruction did "not, even arguably, direct the jury to choose a certain verdict," and it was legally correct because the principle that the jury's verdict must be founded on the admitted evidence and law as given in the instructions "is an accurate—and bedrock—statement of law that mirrors the juror's oath; upholds the role of judge and jury; and most importantly, protects the accused." 310 Kan. at 631.

In Patterson's trial, the preliminary instruction and Instruction No. 1 informed the jury it must reach its verdict by applying the law provided in the instructions. Those instructions, which are substantively identical to those approved in *Boothby*, were legally appropriate for the same reason—it is the jury's duty to follow the court's instructions.

Also missing the mark is Patterson's claim that it was error to instruct the jury it "should" convict absent reasonable doubt, because he believes the word "should" discouraged the jury from exercising its nullification power. He argues no statute requires or says the jury should enter a guilty verdict if the State proves the charges beyond a reasonable doubt. In Patterson's view, the jury must only be told that it "may" convict upon such proof.

14

But these contentions are undercut by *Boothby*, which emphasizes it is improper to tell the jury that it may nullify. And the instruction given to Patterson's jury does not raise the "directed verdict" concerns underlying the *Smith-Parker* decision. The district court did not err in giving these jury instructions.

THE PROSECUTOR'S VOIR DIRE

Patterson makes a related claim that a prosecutor committed error during voir dire by saying that an empaneled jury could not "debate" the law. This argument suffers from the same misunderstandings already discussed.

*Additional facts*

During voir dire, a prosecutor had the following exchange with a prospective juror:

> "[The Prosecutor]:  Okay. The *obligation to follow the law*, that is a benefit we have in the United States is that we can sit and we can debate about the fairness of laws. You know, you hear it on TV ad nauseum, politics and things like that, and there is no consequences.

> "True, Juror No. 62, do you feel like you can express your views about things and contradict things during conversations and that is okay? So that was a bad question.

> . . . .

> "Like if you are at your work, and it's lunch, you can have a conversation and you can disagree with co-workers, state your own opinion.

15

"Prospective Juror No. 62:  Yes.

"[The Prosecutor]:  Okay. So we don't have that luxury as a juror when it comes to jury instructions. *And what that means is at the end of the trial you will get a packet of jury instructions and that is the law in the case. You don't get to go back and debate that.*" (Emphases added.)

*Standard of review*

"In considering a claim of prosecutorial error, [the court] follow[s] a two-step analysis. [It] first determine[s] whether an error occurred. Second, if an error has been found, [it] evaluate[s] the prejudice [the error] caused to determine whether it was harmless. *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016). At the first step, error occurs if the appellate court determines the prosecutor's actions or statements 'fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial.' 305 Kan. at 109. A criminal defendant establishes the first prong by establishing the prosecutor misstated the law or argued a fact or factual inferences with no evidentiary foundation. See *State v. Wilson*, 309 Kan. 67, 78, 431 P.3d 841 (2018); *State v. Hilt*, 307 Kan. 112, 124, 406 P.3d 905 (2017)." *State v. Ballou*, 310 Kan. 591, 596, 448 P.3d 479 (2019).

*Discussion*

Patterson contends the italicized portions of the prosecutor's comments misstated the law. He relies on the cited arguments and authorities advanced in support of his jury nullification issue, which we already have discounted. There was no error.

A jury's verdict must be founded "'entirely upon the evidence admitted and the law as given in [the] instructions.'" *Boothby*, 310 Kan. at 631. It is not a misstatement of law

to "tell[] a jury to follow the law." 310 Kan. at 632. At most, that is all the prosecutor's comment did—tell the jury to follow the law as given in the instructions.

## THE HARD 25 LIFE SENTENCE

For the first time on appeal, Patterson lodges case-specific and categorical challenges to his hard 25 life sentence under § 9 of the Kansas Constitution Bill of Rights and the Eighth Amendment to the United States Constitution. We consider first the obvious preservation problem.

*Preservation*

In *State v. Dull*, 302 Kan. 32, 351 P.3d 641 (2015), the court held a proportionality challenge to a sentence's constitutionality raised for the first time on appeal was properly limited to whether the sentence was categorically disproportionate in violation of the Eighth Amendment. The court reasoned,

> "[The Court of Appeals] identified that challenges to proportionality under the Eighth Amendment are divided into two classifications: (1) the length of term-of-years sentences given all the circumstances in a particular case; and (2) categorical restrictions on the death penalty. This second classification also encompasses cases in which the court implements the proportionality standard based on certain categorical restrictions. See *State v. Ross,* 295 Kan. 424, 428, 284 P.3d 309 (2012).

> "As a challenge under the first classification is case-specific, which requires factual findings, it is precluded from being raised for the first time on appeal. See *Gomez,* 290 Kan. at 864-65. Likewise, a challenge under § 9 of the Kansas Constitution Bill of Rights generally cannot be raised for the first time on appeal because of the factual inquiries involved. 290 Kan. at 867-68 (application of *State v. Freeman,* 223 Kan. 362,

17

367, 574 P.2d 950 [1978], factors in § 9 analysis involves both legal and factual inquiries).

"The opposite is true under the second classification, a categorical proportionality challenge under the Eighth Amendment. After identifying the nature of the offense and the characteristics of the offender, the *Graham* Court applied a two-prong analysis in considering a categorical challenge under the Eighth Amendment. This analysis considers whether a national consensus against the sentencing practice exists and instructs the court to use its own independent judgment taking into account precedent and the Eighth Amendment. 560 U.S. at 61. As the factors assessed in a categorical proportionality challenge are not case specific and generally raise questions of law, a categorical proportionality challenge may be raised for the first time on appeal under certain circumstances. *Gomez,* 290 Kan. at 866. Accordingly, the panel correctly concluded that it could consider only Dull's Eighth Amendment categorical proportionality challenge involving only questions of law." *Dull*, 302 Kan. at 38-39.

There are at least two reasons for a defendant to ensure adequate factual findings are made in the district court to support appellate arguments on case-specific challenges. One is that the court has repeatedly emphasized this is a prerequisite. See *State v. Cervantes-Puentes*, 297 Kan. 560, 565, 303 P.3d 258 (2013) (citing cases). The other is that addressing the issue for the first time on appeal deprives the State of the opportunity to develop a record. *State v. Mondragon*, 289 Kan. 1158, 1163, 220 P.3d 369 (2009).

Patterson argues his case-specific challenge is appropriately before this court because it involves only a question of law based on relevant facts established at his jury trial and sentencing. He identifies those facts are that he did not fire the gun; had fled the store when Wiley shot Jon; was only 19 years old; had two young children; and had minimal criminal history.

18

But even if those facts are established, they do not tell the whole story needed to evaluate a case-specific, § 9 challenge. And the State's response shows this by reciting additional facts it believes relevant including the alleged circumstances of other crimes Patterson was charged with—but apparently not yet convicted of—at the time of sentencing.

We hold that Patterson has not shown why his case is an exception to the general rule that case-specific challenges may not be raised for the first time on appeal. We consider his categorical Eighth Amendment challenge next.

*Standard of review*

A categorical Eighth Amendment challenge is a question of law over which we have unlimited review. *Dull*, 302 Kan. at 40.

*Discussion*

> "The United States Supreme Court identifies three subcategories of categorical proportionality challenges. The first considers the nature of the offense, such as a prohibition on capital punishment for nonhomicide crimes against individuals. *Graham* [*v. Florida*, 560 U.S. 48, 60-61, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010)] (citing *Enmund v. Florida*, 458 U.S. 782, 102 S. Ct. 3368, 73 L. Ed. 2d 1140 [1982]). The second considers the characteristics of the offender, such as a categorical rule prohibiting the death penalty for juveniles. *Graham*, 560 U.S. at 61 (citing *Roper v. Simmons*, 543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 [2005]). The third, which was first recognized in *Graham*, combines the two because it 'implicates a particular type of sentence as it applies to an entire class of offenders who have committed a range of crimes.' 560 U.S. at 61." *State v. Williams*, 298 Kan. 1075, 1086, 319 P.3d 528 (2014).

Patterson's claim fits within the third category. He argues a hard 25 life sentence is unconstitutional for a class of offenders (19-year-olds) given the nature of his offense (those convicted of felony murder for a killing committed by another). But this fails to frame a valid categorical challenge.

For one, the class of offenders he identifies is too narrow. "As to the class of offenders, the Supreme Court has categorized defendants by broad characteristics such as those who committed their crimes before the age of 18 or whose intellectual functioning is in a low range." *State v. Mossman*, 294 Kan. 901, 928, 281 P.3d 153 (2012) (holding first-time offenders is valid category for Eighth Amendment analysis); see *Williams*, 298 Kan. at 1086-87 (holding first-time offenders over age 18 is valid category). And for another, Patterson narrows the nature of the offense beyond the elements of the crime. See *Williams*, 298 Kan. at 1087 (noting defendant's valid categorical challenge did not narrow the crime of conviction). But see *Mossman*, 294 Kan. at 928 (noting Supreme Court had discussed categories somewhat more narrow than the elements of the crime, citing *Coker v. Georgia*, 433 U.S. 584, 97 S. Ct. 2861, 53 L. Ed. 2d 982 [1977] [plurality opinion] [holding death penalty was grossly disproportionate to defendant's conviction for rape of an adult]).

The substance of Patterson's argument focuses generically on the crime of felony murder. So the analysis must address whether the hard 25 life sentence is categorically disproportionate as applied to young-adult, felony-murder offenders.

> "There is a two-prong test when a defendant raises a categorical proportionality challenge to a term-of-years sentence:
>
> > "'The Court first considers 'objective indicia of society's standards, as expressed in legislative enactments and state practice' to determine whether there is a national consensus against the sentencing practice at

issue. Next, guided by 'the standards elaborated by controlling precedents and by the Court's own understanding and interpretation of the Eighth Amendment's text, history, meaning, and purpose,' the Court must determine in the exercise of its own independent judgment whether the punishment in question violates the Constitution."'

"When applying these factors, community consensus is entitled to great weight but it is not determinative. As [the court] noted in *Mossman*:

"'In accordance with the constitutional design, 'the task of interpreting the Eighth Amendment remains [the Court's] responsibility.' The judicial exercise of independent judgment requires consideration of the culpability of the offenders at issue in light of their crimes and characteristics, along with the severity of the punishment in question. In this inquiry the Court also considers whether the challenged sentencing practice serves legitimate penological goals.'" [Citations omitted.]" *Williams*, 298 Kan. at 1087.

The first prong of the categorical analysis is whether there is a national consensus against sentencing young-adult, felony-murder offenders to hard 25 life sentences. Patterson identifies no authority suggesting any jurisdiction treats young adults differently than other adults for sentencing purposes. See *Graham*, 560 U.S. at 63-64 (reciting nationwide data on number of nonhomicide, juvenile offenders serving life-without-parole sentences).

Life imprisonment—with or without some form of parole—is a common punishment for felony murder for offenders 18 years or older. It is authorized in Kansas, 40 other states, and the District of Columbia. See Ala. Code § 13A-6-2; Ariz. Rev. Stat. Ann. § 13-1105; Ark. Code Ann. § 5-4-401; Cal. Penal Code § 190; Colo. Rev. Stat. § 18-1.3-401; Conn. Gen. Stat. § 53a-35a; Del. Code Ann. title 11, § 4209; D.C. Code §

22-2104; Fla. Stat. § 782.04; Ga. Code Ann. § 16-5-1; Idaho Code § 18-4004; Iowa Code Ann. § 902.1; 730 Ill. Comp. Stat. Ann. 5/5-4.5-20; La. Stat. Ann. § 14:30.1; Md. Code Ann., Crim. Law § 2-201; Mass. Gen. Laws Ann. ch. 265, § 2; Mich. Comp. Laws § 750.316; Miss. Code. Ann. § 97-3-21; Mo. Rev. Stat. § 558.011; Mont. Code Ann. § 45-5-102; Neb. Rev. Stat. § 28-105; Nev. Rev. Stat. § 200.030; N.H. Rev. Stat. Ann. § 630:1-a; N.J. Stat. Ann. § 2C:11-3; N.M. Stat. Ann. § 31-18-14; N.Y. Penal Law § 70.00; N.C. Gen. Stat. § 14-17; N.D. Cent. Code § 12.1-32-01; Ohio Rev. Code Ann. § 2929.02; Okla. Stat. tit. 21, § 701.9; Or. Rev. Stat. § 163.115; 18 Pa. Stat. § 1102; R.I. Gen. Laws § 11-23-2; S.C. Code Ann. § 16-3-20; S.D. Codified Laws § 22-6-1; Utah Code Ann. § 76-5-203; Vt. Stat. Ann. tit. 13, § 2303; Va. Code Ann. § 18.2-10(b); Wash. Rev. Code § 9A.32.040; W. Va. Code § 61-2-2; Wyo. Stat. Ann. § 6-2-101.

Other jurisdictions authorize lengthy term-of-years punishments, some arguably equivalent to life sentences. Alaska Stat. § 12.55.125 (15-99 years); Ind. Code § 35-50-2-3 (45-65 years); Me. Rev. Stat. tit. 17-A, § 1604 (30 years); Minn. Stat. § 609.19 (40 years); Tex. Penal Code Ann. § 12.32 (5-99 years); Wis. Stat. § 940.03 (15 years in addition to maximum prison term for underlying crime).

There is no national consensus against the sentencing practice at issue.

The analysis' second prong is whether the court, in its independent judgment, believes the sentencing practice violates the Constitution. On this prong, Patterson leans heavily on the *Graham* Court's analysis, which culminated in the holding that life without parole sentences are categorically disproportionate when juveniles commit nonhomicide offenses. See *Graham*, 560 U.S. at 82. The *Graham* Court noted this factor requires courts to consider the culpability of the offenders at issue in light of their crimes and characteristics, along with the punishment's severity. 560 U.S. at 67.

22

In reaching its outcome, the Court concluded that juveniles are less culpable than adults because they lack maturity, have an underdeveloped sense of responsibility, and are more vulnerable to outside influence. As a result, they could not be classified among the worst offenders. 560 U.S. at 68. The Court also determined that offenses in which there was no killing, intent to kill, or foreseeable loss of life, were less deserving of the more serious forms of punishment than murders. For these reasons, it concluded, juveniles who committed such crimes had "twice diminished moral culpability" as compared to adult murderers. 560 U.S. at 69.

And as to the punishment, the Court noted that life without parole is the second-most severe punishment and, like the death penalty, is irrevocable because it leaves no hope of restoration beyond the remote possibility of executive clemency. This sentence is especially harsh for juveniles, who would potentially spend larger percentages of their lives incarcerated than adult offenders. 560 U.S. at 69-70.

The Court concluded the punishment was not adequately justified by any of the legitimate penological goals. The case for retribution was not as strong for juveniles as for adults. Juveniles' lack of maturity and underdeveloped sense of responsibility and the sentencing practice's rarity limited the practice's deterrent effect. Juveniles' capacity for change undercut an incapacitation rationale. And the sentence's irrevocability rendered rehabilitation inapplicable. 560 U.S. at 71-74.

But the *Graham* Court's rationale does not dictate the result Patterson seeks. We already have held a hard 20 life sentence is not categorically disproportionate as applied to a juvenile offender convicted of felony murder. *State v. Brown*, 300 Kan. 542, Syl. ¶ 8, 331 P.3d 781 (2014). And even if young adults have diminished moral culpability as compared to older offenders, a young adult defendant convicted of felony murder does not have the twice diminished moral culpability identified by the *Graham* Court.

23

The killing at She's A Pistol was a foreseeable consequence of Patterson's participation in an inherently dangerous felony, despite his argument that he did not kill or intend to kill. See *State v. Gleason*, 277 Kan. 624, 638, 88 P.3d 218 (2004) ("[W]here the underlying felony is one inherently dangerous to human life, such as a burglary, the foreseeability requirement is established as a matter of law.").

Moreover, the traditional penological justifications offer more support for the sentence as applied to Patterson's class of offenders than in *Graham*. As to the sentence's retributive purpose, the foreseeability of killing undercuts *Graham's* diminished-culpability rationale. As to deterrence, there has been no showing the hard 25 life sentence for felony murder is nearly as rare as the life-without-parole sentence for juveniles convicted of nonhomicide offenses. And as to incapacitation, a hard 25 life sentence is not based on the assumption the offender cannot reform, since an opportunity for parole is built into the sentence. Likewise, the opportunity for parole means the sentence does not "forswear[ ] altogether the rehabilitative ideal" like life without parole does. See *Graham*, 560 U.S. at 74; see also *Brown*, 300 Kan. at 564 ("A hard 20 life sentence does not irrevocably adjudge a juvenile offender unfit for society.").

While Patterson strains to put himself in the same position as a juvenile offender, the nature of his offense and the punishment he challenges makes *Graham* the wrong authority for him to rely on. *Graham*'s central tenets—twice diminished culpability and the sentence's irrevocability—are absent in Patterson's case. The hard 25 life sentence is not categorically disproportionate as applied to young adults convicted of felony murder.

Patterson's *Apprendi* challenge requires only brief mention. This court has "repeatedly rejected *Apprendi* challenges to the use of criminal history scores." *State v. Scuderi*, 306 Kan. 1267, 1272, 403 P.3d 1206 (2017); see also *State v. Shaylor*, 306 Kan. 1049, 1050, 400 P.3d 177 (2017) (summarily dismissing claim in opinion's introductory paragraphs). The district court did not err in this regard.

Affirmed.

MICHAEL E. WARD, District Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:** District Judge Ward was appointed to hear case No. 118,180 under the authority vested in the Supreme Court by art. 3, § 6(f) of the Kansas Constitution to fill the vacancy on the court by the retirement of Justice Lee A. Johnson.