NOT DESIGNATED FOR PUBLICATION

No. 127,453

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

LONDRO EMANUEL PATTERSON III,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Johnson District Court; TIMOTHY MCCARTHY, judge. Submitted without oral argument. Opinion filed January 30, 2026. Affirmed.

*Joseph A. Desch*, of Law Office of Joseph A. Desch, of Topeka, for appellant, and *Londro E. Patterson III*, appellant pro se.

*Jacob M. Gontesky*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before WARNER, C.J., ARNOLD-BURGER and PICKERING, JJ.

PER CURIAM: In 2015, Londro Patterson was one of four people involved in an attempted armed robbery of a gun store in Shawnee that left the store owner dead and Patterson with a gunshot wound. The other people involved in the crime entered favorable plea deals, but Patterson insisted that he wanted to take his case to trial. Apparently recognizing that the jury would see a video recording of the entire encounter, which was captured on the store's surveillance cameras, Patterson's attorneys provided a guilt-based defense—essentially admitting that Patterson participated in the failed

1

robbery but arguing that he had abandoned the effort when he was shot and thus should not be held responsible for the owner's death. The jury disagreed, finding him guilty of felony murder, conspiracy to commit robbery, attempted aggravated robbery, and aggravated battery.

This case seeks postconviction relief under K.S.A. 60-1507, claiming that Patterson's attorneys' decision to provide a guilt-based defense was constitutionally deficient representation that deprived him of a fair trial. The district court held an evidentiary hearing on this claim and ultimately denied Patterson's request for relief. We affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Patterson was convicted of felony murder, conspiracy to commit robbery, attempted aggravated robbery, and aggravated battery—all stemming from the same events in 2015. The Kansas Supreme Court affirmed Patterson's convictions in his direct appeal and described the facts giving rise to Patterson's convictions in detail. See *State v. Patterson*, 311 Kan. 59, 455 P.3d 792, *cert. denied* 141 S. Ct. 292 (2020).

In 2015, "Patterson and three accomplices—De'Anthony Wiley, Hakeem Malik, and Nicquan Midgyett—tried to rob a Shawnee gun store, She's A Pistol, at gunpoint. Jon Bieker and his wife, Rebecca, were the store's proprietors. Jon was killed." 311 Kan. at 60. Wiley entered the store disguised as a woman and began speaking with Rebecca about the store's products; "Patterson, Malik, and Midgyett then entered the store. Wiley and Patterson pointed weapons at Rebecca. Midgyett punched Rebecca and knocked her unconscious. Jon emerged from the store's back room with a gun. The robbers fled as shots were exchanged." 311 Kan. at 60. "Wiley fatally shot Jon. Wiley was shot and found inside the store. Midgyett was shot and found with Malik at a nearby house.

Patterson sustained two gunshot wounds. Police found him lying in the grass near the store. Jon fired at least one bullet that hit Patterson." 311 Kan. at 60.

"The State charged Patterson with felony murder, attempted aggravated robbery, conspiracy to commit aggravated robbery, and aggravated battery." 311 Kan. at 60-61. During closing arguments, Patterson's trial counsel "admitted Patterson conspired and attempted to rob She's A Pistol but argued he should not be liable for Jon's death because his participation ended when he left the store." 311 Kan. at 61. (In the current appeal, Patterson describes this argument as a guilt-based defense because one of his attorneys admitted that Patterson was guilty of at least one of the felonies charged. Patterson's trial attorneys describe the argument as a withdrawal defense because they emphasized that Patterson *withdrew* before the shop owner was killed.)

"The jury convicted Patterson of felony murder, conspiracy to commit robbery, attempted aggravated robbery, and a lesser form of aggravated battery" but declined to find two aggravating circumstances the State alleged in hopes of increasing Patterson's sentence. 311 Kan. at 61. The district court sentenced Patterson to a hard 25 sentence for the felony murder conviction and "consecutive 47-, 34-, and 13-month prison terms for the remaining three convictions." 311 Kan. at 61. The Supreme Court affirmed Patterson's convictions and sentence. 311 Kan. at 60, 77.

Patterson filed a pro se K.S.A. 60-1507 motion in August 2021. The motion alleged numerous claims, including that his attorney provided ineffective assistance of counsel that deprived him of a fair trial. Patterson argued that his attorney "was ineffective and had violated his right to a fair trial when he submitted to a jury that [Patterson] had conspired to ro[b] the gun store and was guilty of that, but was not guilty of murder." According to Patterson, the attorney's admission meant the State was no longer "required to prove beyond a reasonable doubt that Petitioner had killed the victim in order to convict him of felony murder."

In its response, the State urged the district court to summarily deny most of Patterson's claims. But it agreed that the court should hold an evidentiary hearing on Patterson's claim related to his trial attorney's concession of guilt.

The district court followed this suggestion; it held an evidentiary hearing on Patterson's ineffective-assistance claim and denied Patterson's other requests for relief. Patterson—by that point represented by counsel—testified on his own behalf. Patterson testified that:

- His trial attorneys, Zane Todd and Vincent Rivera, tried to convince him to take a plea deal the State had offered, but he refused to do so because he "didn't feel like it was fair." So the case ultimately proceeded to trial.

- He and his trial attorneys spoke multiple times about whether Patterson should testify, and Patterson consistently expressed his desire to testify. But during the trial, Todd told Patterson that if he testified, Todd would "withdraw [as] counsel." Patterson decided not to testify.

- Patterson's trial attorneys waived opening statements and presented no witnesses for the defense. Thus, Patterson's entire defense consisted of Todd's closing argument.

- Once the trial was nearing its end, Todd discussed with Patterson the plan of using a guilt-based defense, where Todd would admit that Patterson conspired to rob the gun store. Patterson stated that he was firmly against admitting any guilt and told Todd that he disagreed with that plan.

4

- Todd ultimately did deliver a guilt-based defense. When Todd returned to the counsel table, Patterson asked Todd why he gave that argument. Todd leaned closer to Patterson and said that he gave the argument "to get [Patterson] back in court." This made Patterson feel like Todd "threw [his] trial on purpose."

When the State asked Patterson why he did not stand up and object when Todd began giving this guilt-based closing argument, Patterson testified, "I was never instructed by counsel that I could just get up and object like that. I thought that was the prosecutor and attorneys' job to do that."

Todd also testified at the hearing, stating that he had represented criminal defendants in roughly 240 jury trials, many of which were for high-level felony criminal cases. Todd then provided a different explanation for what had occurred in Patterson's case. According to Todd:

- Todd visited Patterson on many occasions throughout the case, often through video calls. During these visits, they "discussed the case, what was going on, what the plea offers were, about the other codefendants pleading" and "the importance of maybe taking a deal if we couldn't get anything better than what the offer was and possible defenses to the case."

- Before trial, Patterson had told Todd that someone had given him a gun and threatened him "if he didn't go along with this." But later, Patterson "wrote [Todd] a letter advising that it was all completely baloney." Todd testified that he was not sure if Patterson changed course "because he didn't want to have to get up and testify against" the other people involved in the case or "because it wasn't completely true."

- "Patterson never really argued" with anything Todd would propose, so when Patterson indicated that he would consider a plea deal, Todd "negotiated in great detail" with the State. After a codefendant accepted a plea, Todd would go back to the State and try to convince the State why Patterson was not as culpable as that codefendant and thus deserved a better deal than the other.

- Todd felt Patterson should take a plea deal because he was worried that Patterson would ultimately get a harsher sentence if he went to trial than what the codefendants received through their pleas. Todd also communicated often with Patterson's family, who shared the consensus that he should accept a plea.

- Todd always tells his clients that it is their decision whether to take a plea and whether to testify at trial.

- Patterson "had an unusual mannerism that he would agree as we are discussing. He would shake his head and he would agree with everything. And then often at the end when we were completely done, then he would say almost something completely different at times."

- Todd would "never tell anyone" that he would withdraw as their attorney if they testified, and he could not imagine that a judge would permit him to withdraw in that instance.

- Todd felt strongly that given the evidence, the only possible approach would be to convince the jury that the attempted robbery crime was over, abandoned by Patterson, long before a codefendant shot and killed the victim inside the gun store. And Patterson never expressed any disagreement with this approach.

When the State asked if Todd had made his closing argument with the point of getting Patterson "back in court" as Patterson alleged, Todd replied, "No, I used that argument because I felt that was the best argument in this case." Todd then testified that he had previously used a similar argument in another felony murder case, and in that case the jury agreed and found that his client had withdrawn from the crime.

Finally, Todd testified that he asked Patterson what he expected out of a trial instead of a plea. Patterson responded, "[A] miracle."

Rivera, the other defense attorney, provided a similar explanation of what had occurred. Rivera agreed that Patterson wanted to "roll the dice" rather than take a plea deal, and Patterson stated he believed that God would deliver a miracle. Rivera also testified that he had a phone call with Todd mid-trial where Rivera was "panicked a little bit because [they] didn't have a lot to work with," and Todd decided they should do the withdrawal argument during the closing. According to Rivera, Todd felt their best route would be to try for jury nullification. Rivera did not remember either himself or Todd discussing this plan with Patterson—it might have happened, but he could not recall. And Rivera did not remember discussing with Patterson any implication that conceding to the conspiracy to commit aggravated robbery could be "functionally the same as admitting guilt to felony murder."

After hearing this testimony, the district court found that Patterson had not shown that his attorneys' actions were constitutionally deficient or affected the outcome of his trial. The court noted that "the crime was on video both outside and inside the store, so I don't think that there were a lot of questions that the jury would have in this particular case." The court also noted that although the jury did not find Todd's withdrawal argument persuasive on the issue of guilt, the court still believed that the defense had some impact, as the jury declined to make findings necessary for imposing a hard 50 sentence.

DISCUSSION

On appeal, Patterson does not challenge the district court's summary denial of most of the claims in his K.S.A. 60-1507 motion. But he argues that the court erred when it denied his claim that Todd and Rivera had provided constitutionally defective representation when Todd admitted in closing argument that Patterson had committed the underlying felonies—conspiracy to commit robbery, attempted aggravated robbery, and aggravated battery—that gave rise to his felony-murder conviction. Patterson argues that this defense was essentially no defense, as it conceded his guilt on all the elements that a jury must find to convict him of felony murder. He also argues that the court should have found that Todd coerced Patterson into not testifying at trial.

When a district court denies a K.S.A. 60-1507 motion after holding an evidentiary hearing—as the district court did here—appellate courts review factual findings for substantial competent evidence, then determine whether those findings support the district court's legal conclusions. *State v. Adams*, 297 Kan. 665, Syl. ¶ 1, 304 P.3d 311 (2013). "Substantial competent evidence is legal and relevant evidence a reasonable person could accept to support a conclusion." *State v. Talkington*, 301 Kan. 453, Syl. ¶ 3, 345 P.3d 258 (2015). Appellate courts do not reweigh the evidence, assess witness credibility, or resolve evidentiary conflicts. 301 Kan. 453, Syl. ¶ 3. Legal conclusions are subject to unlimited review. *Adams*, 297 Kan. 665, Syl. ¶ 1.

The Sixth Amendment to the United States Constitution guarantees criminal defendants "the Assistance of Counsel" for their defense. U.S. Const. amend. VI. This assistance must be "reasonably effective," because the failure to provide effective assistance of counsel deprives a defendant of a fair trial in violation of the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687, 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

To determine whether an attorney's performance constitutes ineffective assistance of counsel, courts examine whether the attorney's representation was deficient and whether any constitutionally defective representation prejudiced the defendant. 466 U.S. at 687. That is, the defendant must show (1) the attorney's actions were objectively unreasonable under the totality of the circumstances, and (2) but for those actions, there is a reasonable probability that the outcome would have been different. 466 U.S. at 688, 694; *Chamberlain v. State*, 236 Kan. 650, Syl. ¶ 3, 694 P.2d 468 (1985) (adopting *Strickland*).

Under *Strickland*'s effectiveness inquiry, courts' review of an attorney's actions is "highly deferential"; in other words, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Chamberlain*, 236 Kan. 650, Syl. ¶ 3. Courts must examine the representation from the attorney's perspective at the time of trial "'to eliminate the distorting effects of hindsight.'" *Edgar v. State*, 294 Kan. 828, 838, 283 P.3d 152 (2012). Matters of trial strategy, such as what witnesses to call or what motions to file, are decisions for the attorney—and courts will defer to the attorney's reasonable discretion. 294 Kan. at 838-39. Other decisions, such as whether a defendant will testify, are ultimately up to the defendant. 294 Kan. at 838.

*Strickland*'s second consideration—prejudice—focuses "'on the fundamental fairness of the proceeding.'" *Balbirnie v. State*, 311 Kan. 893, 900, 468 P.3d 334 (2020). To show a reasonable probability that the outcome would have been different but for an attorney's deficient representation, there must be "'a probability sufficient to undermine confidence in the outcome.'" *Chamberlain*, 236 Kan. at 655.

Patterson first argues that this court should analyze this case as we might for an allegedly involuntary guilty plea, not under the two-step analysis for ineffective-assistance claims in *Strickland*. Patterson asserts that when his trial attorneys employed a

guilt-based defense, they essentially entered Patterson into a guilty plea against his wishes and without a sufficient waiver of his right to trial by jury. As the State notes, Patterson did not make this argument to the district court. But even so, the caselaw is clear that a guilt-based defense and a guilty plea are different, and attorneys' guilt-based arguments are analyzed under the *Strickland* standard.

In fact, two cases—one from the United States Supreme Court and one from our Kansas Supreme Court—directly contradict Patterson's contention.

First, in *Florida v. Nixon*, 543 U.S. 175, 125 S. Ct. 551, 160 L. Ed. 2d 565 (2004), the Florida Supreme Court had overturned the conviction of a defendant whose trial counsel pursued a guilt-based defense without express permission of the defendant, finding that a guilt-based defense is "'the functional equivalent of a guilty plea'" and thus requires the defendant's "'affirmative, explicit acceptance.'" 543 U.S. at 188 (quoting *Nixon v. Singletary*, 758 So. 2d 618, 624 [Fla. 2000]). The United States Supreme Court reversed, finding that equating a guilt-based defense to a guilty plea was in error. *Florida v. Nixon*, 543 U.S. at 188. The Court reasoned that a guilty plea is "a 'stipulation that no proof by the prosecution need be advanced'" whereas with a guilt-based defense, the State is still "obliged to present during the guilt phase competent, admissible evidence establishing the essential elements of the crimes." 543 U.S. at 188 (quoting *Boykin v. Alabama*, 395 U.S. 238, 242-43, 89 S. Ct. 1709, 23 L. Ed. 2d 274 [1969]). Further, the Court explained, a defendant using a guilt-based defense still has the right to cross-examine the prosecution's witnesses, exclude evidence, and appeal errors stemming from the trial or jury instructions. *Nixon*, 543 U.S. at 188.

The Kansas Supreme Court reached a similar conclusion in *State v. Bentley*, 317 Kan. 222, 230, 526 P.3d 1060 (2023). Applying *Nixon*, the *Bentley* court essentially rejected the same argument Patterson makes here. *Bentley*, 317 Kan. at 241.

This court is duty bound to follow the Kansas Supreme Court's precedent absent an indication that it is departing from that precedent. *State v. Patton*, 315 Kan. 1, 16, 503 P.3d 1022 (2022). And our Supreme Court has given no indication that it is departing or modifying the rule established in *Bentley*. Thus, we—like the courts in *Nixon* and *Bentley*—proceed to review Patterson's ineffective-assistance claim under the *Strickland* analysis.

We turn to that *Strickland* analysis now. As we have indicated, the first step in our analysis—and the deciding step in this case—examines the objective reasonableness of the attorneys' representation. Our review of the facts shows that the nature of the representation by Patterson's attorneys was certainly contested. And Patterson's testimony at the evidentiary hearing regarding his attorneys' actions differed substantially from the testimony of the attorneys themselves.

- Patterson testified that he explicitly told Todd not to pursue a guilt-based defense. He also testified that he informed Todd that he wanted to testify, and he only decided not to testify when Todd threatened to withdraw as Patterson's attorney mid-trial.

- Todd testified that he believed a withdrawal or guilt-based defense was the only way to have any credibility with the jury, as the entire robbery was caught on video footage, and the jury would watch that recording. Todd testified that he explained this belief to Patterson, and Patterson never expressed any disagreement. Todd also stated that he had not threatened Patterson to convince him not to testify; he had explained that the decision whether to testify was up to the client, and Patterson ultimately decided not to take the stand.

- Rivera did not remember he or Todd discussing this plan with Patterson—it might have happened, but he could not recall.

11

The district court apparently found Todd's version of the events the most credible, as it found that Patterson had not shown that his attorneys provided defective representation. Patterson notes that the court never made any explicit findings regarding anyone's credibility. But a district court can implicitly find one party's testimony more credible than the other's through its ruling. *State v. Evans*, 315 Kan. 211, 220, 506 P.3d 260 (2022) ("Within its decision, the court implicitly found Pittman's testimony more credible than Evans' testimony."). And appellate courts do not reweigh evidence, reassess witness credibility, or resolve conflicting evidence. 315 Kan. at 220.

Patterson also asserts that the district court erred in holding that his trial attorneys' actions were not ineffective because they created a "fundamental constitutional error" when they did not consult Patterson on the guilt-based defense strategy. Both the United States Supreme Court and our Supreme Court have held that attorneys provide deficient representation when a defendant *explicitly* instructs their counsel not to pursue a guilt-based defense, and attorneys then go against the defendant's wishes and use that defense—violating the defendant's Sixth Amendment right to assistance of counsel. See *McCoy v. Louisiana*, 584 U.S. 414, 417, 138 S. Ct. 1500, 200 L. Ed. 2d 821 (2018); *State v. Carter*, 270 Kan. 426, 440-41, 14 P.3d 1138 (2000).

But such holding does not extend to instances where a defendant did not explicitly instruct against a guilt-based defense, and "[t]here is no general requirement that counsel first obtain express approval from the defendant" before pursuing a guilt-based defense. *Bentley*, 317 Kan. 222, Syl. ¶ 3. Absent an indication that "a defendant objected to a guilt-based defense, a court considers whether counsel's decision to utilize such a defense was deficient performance and prejudicial under the circumstances." 317 Kan. 222, Syl. ¶ 3. And here the district court implicitly found Todd's testimony—that he discussed with Patterson how the guilt-based defense was the best approach available and that Patterson never expressed any disagreement—more credible.

12

In sum, substantial competent evidence supports the district court's conclusion that Patterson's attorneys did not provide constitutionally defective representation. Those attorneys were faced with a near-Sisyphean task: representing a client who insisted that his case be tried to a jury when his culpable actions were captured on video and would be shown to the jury in court. In such a situation, it was not unreasonable to admit what the video showed was accurate but argue that a conviction on felony murder was inappropriate since Patterson had gone outside (after being shot) before the shop owner was killed. As the district court noted in its ruling, that defense was not ultimately effective on the question of guilt. But it may have convinced the jury to show leniency in not finding any aggravating factors that would have effectively doubled the duration of Patterson's sentence.

The district court did not err when it denied Patterson's K.S.A. 60-1507 motion based on ineffective assistance of counsel.

Affirmed.